## GRESHAM vs. RICKENBACHER.

1. The Legislature has constitutional power to pass an act vesting property before office found, of an illegitimate person who died intestate, leaving no widow, or child, or mother, or illegitimate brother or sister, in half brothers and sister born in lawful wedlock, of the same mother.
2. When the inferior court are required by statute to adjudge the expenses incurred by the escheator, in securing escheated property, they are not bound to direct an issue of fact to ascertain such expenses.
3. If the inferior court be required to determine such expenses, their judgment or award is final and conclusive on the parties.
4. If counsel have been employed by the escheator, a reasonable allowance should be made them by the court.

Certiorari, from Merriwether county. Decision by Judge BULL, at February Term, 1859.

Jacob Stroman was an illegitimate. After his birth, his mother married Samuel E. Rickenbacher, by whom she had children. Jacob died in Merriwether county in 1854, intestate, without a wife or lawful issue, and the children of Rickenbacher by his mother, his half brothers and sisters, were his nearest of kin.

Temporary letters of administration on his estate were granted by the ordinary of Merriwether county to one Pyron, and afterwards permanent letters to one Mitchell. Steps were taken, counsel consulted and employed, and some proceedings had, by David C. Gresham, the ordinary and escheator of said county, to escheat his estate; which amounted to about thirty thousand dollars. Pending these proceedings, the General Assembly passed an act to prevent said estate from escheating, and to vest the same in the said half brothers and sisters of deceased, and their representatives. Said act provided, among other

Gresham vs. Rickenbacher.

things, that the escheator be allowed to retain a sufficient amount of said estate to pay expenses already incurred by him in securing said property under the escheat laws, and which expenses were to be passed upon and adjudged by the inferior court of said county.

The escheator was served with a rule or notice to render and present his account for expenses thus incurred to the inferior court of said county, as provided by said act.

To this rule the escheator answered, that said act was unconstitutional, as well as the act of 5th March, 1856, and being thus unconstitutional and void, he ought not to be required to comply with its terms and provisions in rendering the account called for.

Subject to this objection, respondent answered, that in securing said estate under the escheat laws of the State, he was resisted by movents and forced to employ counsel; that he did employ Edward Y. Hill and Benjamin H. Hill, attorneys at law, promising to pay to each one thousand dollars, to be paid out of the property to be escheated. He also corresponded with F. H. Cone, Esq., and promised to pay him a thousand dollars out of the estate for his services in the case. The Messrs. Hill rendered services in preparing arguments against the constitutionality of said act, before its passage, and Judge Cone furnished various written opinions to respondent in relation to escheating said estate, but no further service; that he, as escheator, has been put to considerable trouble in relation to said estate, and he submits to the court to allow him such compensation as they deem fit and proper; that the estate is worth about thirty thousand dollars.

The inferior court allowed respondent, as escheator, one hundred dollars on account of expenses incurred, but refused to allow anything for counsel fees.

To this decision respondent excepted, and sued out a *certiorari* to have said judgment reviewed and reversed.

Upon hearing the *certiorari*, and the return made thereto,

by the inferior court, and after agument, the presiding judge dismissed the same, and affirmed the judgment of the inferior court. To which decision respondent excepts, and assigns the same as error.

B. H. HILL, for plaintiff in error.

HIRAM WARNER, contra.

By the Court.—McDONALD, J., delivering the opinion.

In 1857, (Acts 296) the Legislature passed an act that the estate of Jacob Stroman, deceased, who was an illegitimate person, and had died intestate, leaving no widow, or child or children, or mother, or illegitimate brother or sister, should not be escheated for the benefit of the public, under the escheat laws of this State, but that it should be vested in the half brothers and sister of the said Jacob Stroman, who, it appears from the preamble of said act, were born in lawful wedlock of the body of the same mother, after her inter-marriage with Nicholas Rickenbacher. Prior to the passage of this act, the plaintiff in error had initiated proceedings, as escheator of Merriwether county, to have the property of said Stroman escheated. The vested right of any individual, corporation or county, then existing or theretofore acquired in the estate of said Jacob Stroman, was protected by the said act.

The said act further declared that the public escheator of said county should be allowed to retain a sufficient amount of said estate to pay expenses already incurred by him in securing said property, under the escheat laws, all of which were to be adjudged by the inferior court of Merriwether county.

At the April Term, 1858, of the inferior court of said county, the said court passed an order nisi requiring the plaintiff in error, as public escheator of said county, to

present and exhibit to the court, during that term, a just and true account of all expenses incurred by him as such public escheator, prior to the passing of said act, in securing the property of the said Jacob Stroman under the the escheat laws of this State, duly vouched and authenticated, that the court might consider and adjudge the same, under the provisions and requirements of said act, or show cause why he should not do so.

The escheator responded to said order, and insisted in his answer:

1st. That the act under which the court granted the order is unconstitutional and cannot be enforced;

2d That the State of Georgia had no interest in Jacob Stroman's estate, and relinquished nothing to the persons claiming under the act;

3d. That Jacob Stroman had departed this life prior to the passing of the act of 1857, and an inventory of his property had been made out and returned under the escheat laws; that his estate had vested in the county of Merriwether, under the laws of the State, and could not be divested under the act in question;

4th. That the act reserved the vested right of any individual, corporation or county in the said estate, and that it had previously vested in the county of Merriwether.

The respondent then proceeds to state his services and responsibilities as public escheator, and the commissions to which he would have been entitled if the property had been escheated, and that the estate was worth $30,000; that he had been forced to employ counsel; that he had employed three counsel at a fee of one thousand dollars each, to be paid out of the property of said estate; that one of the counsel had given a written opinion, and the other two had rendered professional services in court, and had prepared arguments in opposition to an act introduced into the Legislature, at the session of 1855–6, discussing its constitutionality by which means it was defeated.

On considering the answer of respondent and hearing the evidence, the inferior court awarded him one hundred dollars for expenses, overruling all other objections to the proceedings under the act of 1857.

The plaintiff in error excepted to the decision of the inferior court, and carried the cause to the superior court by writ of *certiorari*, to have the errors corrected. He complains, in his petition, that the inferior court allowed him an insufficient sum for his expenses, and made him no allowance for counsel fees; he complains further, that the court refused to direct an issue of the facts of the case to be made up and submitted to a jury, and annexes a statement of the decisions of the inferior court to his petition, with his exceptions thereto. Among these decisions is one that said court determined the act of 1857 to be constitutional.

The judge of the superior court sustained the inferior court in all its rulings, and his judgment on the *certiorari* is excepted to, and makes this case.

1. It is objected that the act of 1857, which vests the estate of Jacob Stroman in his half brothers and sister, is unconstitutional. The act must be supposed to have been passed at the instance of those benefitted by its enactment, and on the assumption by them that, without it, they would have no interest in the estate. No one else appears to claim it. Stroman died intestate. The State as sovereign, or representing the sovereignty of the people, was his ultimate heir, and succeeded to his estate. The sovereign authority having the right of inheritance or escheat, had the power to relinquish it and vest it elsewhere, provided it had made no irrevocable or irrepealable regulation respecting this estate, or estates of like description generally. Our statutes respecting escheats are based upon the principle that the State is the ultimate heir in such cases. They recognize the higher claim of the heirs proper of the deceased, and others who may

claim under him.   They require the escheator to advertise
for his heirs after the inquest.   After the property was
sold, and the money arising from the sale was paid into
the treasury, (during the existence of the law which re-
quired it to be paid there,) persons were allowed twenty-
one years to establish their claim to escheated real estate,
and five years to escheated personal property; and upon
establishing such claim, they were entitled to a draft on
the treasury for the amount paid therein.  During all this
time the State did not insist upon an absolute right to the
property, for it held the proceeds in trust for those whose
superior right it recognised.   But the State ever main-
tained the right in itself when no claimant appeared.   But
the right of the State is not established until after inquest
and office found.   After such right becomes complete, the
State may unquestionably bestow the property or pro-
ceeds, by proper enactments, on any persons whom the
Legislature in its wisdom may consider entitled to it on
principles of natural justice, without usurping unconsti-
tutional power.   It is equally unquestionable that the
Legislature may, while its right remains uncertain, doubt-
ful and unsettled, relinquish that right, whatever it may
be, and vest it in such persons as it may choose to indi-
cate.

It is said, however, that the Legislature has already dis-
posed of all its right and property to escheated property,
and that, inasmuch as Stroman departed this life prior to
the passing of the act of 1857, rights had vested under a
general statute which this special act could not divest.
The general statute referred to is the act of 1836, (Cobb,
255,) the first section of which declares that "all moneys
arising from the sale of escheated property in the several
counties in this State, shall vest in and become a part of
the fund of said counties respectively."   If the principle
contended for be tenable, it cannot apply to this case, be-
cause there had been no inquest; there had been no find-

Gresham vs. Rickenbacher.

ing on an inquest; there had been no sale of property; and there was no *money* arising from the sale of the property to *vest* in the county. It was all yet under the control of the authority of the State. If the money had been paid over and become a part of the county fund, under the first section of the act, it was still subject to be drawn therefrom under the third section of the act of 1836, within the time and under the circumstances that it might have been drawn from the treasury under the law to which I have already adverted. We think, therefore, that the Legislature in passing the act of 1857 transcended no constitutional power.

2. It was objected on the hearing of this cause before the inferior court, that evidence could not be introduced to controvert the answer of the escheator, until an issue of fact was made thereon. It is replied, that there was no controversy respecting any matter of fact arising upon the answer. The act under which the proceeding was had, referred the settlement and adjustment of the expenses incurred by the escheator to the inferior court. To form a judgment in regard to what was right, they were obliged to hear evidence. There was no occasion to make an issue of fact and submit it to a jury, unless the court felt itself at a loss to decide some matter of fact and they desired to have their conscience informed by a jury. They certainly had no right to delegate to a jury the power of settling the account of expenses incurred by the escheator. The statute gave the court and the court alone that power.

3. The amount of expenses allowed the escheator is made a ground of complaint and exception. It is insisted that more should have been allowed him. That matter rested solely in the judgment and discretion of the inferior court, and this court has no authority to interfere with their discretion by increasing or diminishing the amount fixed by them, or by setting aside the award made by

them. The statute makes them the sole arbiters of that matter.

4. The inferior court, on the subject of the counsel fees, determined that no allowance could be made for them. In that matter we think that they misconstrued the law and their duty. If they put their judgment on the ground that by the contracts made between the escheator and the attorneys employed by him, their fees were conditional, to be paid from the proceeds of the sale of the property, and that nothing could be paid because the Legislature arrested the proceedings to escheat the property, and the sale could therefore never be made, they erred in their judgment. They had already given a different interpretation in awarding expenses to the escheator; for, by the general law of escheats, he was not entitled to pay except by commissions on the amount of the sales of the escheated property, and the commission allowed was to make him compensation and to pay all expenses incurred. But the Legislature, in giving the defendants in error the property, had the right to prescribe the terms on which they should have it. They take it under that grant, and they take it subject to the charges imposed on it in the grant. It cannot be presumed that the general assembly were not apprised of the law applying to ordinary cases, viz: that neither compensation nor expenses were payable but from the sale of the escheated property. On the contrary, the act shows that they had that matter in their mind, and therefore made it a condition of the grant that the expenses already incurred by the escheator in securing the property should be paid. The amount of expenses were not to be determined by the interested judgment of the escheator, but it was left to the determination of a disinterested and impartial arbiter, capable of forming a correct judgment. It was urged in the argument that the escheator did not secure the property, and that therefore ho is not entitled under the act. He initiated proceedings

for that purpose, and we hold that to be the meaning of the act.

We reverse the judgment of the court below on the ground, that in our judgment the presiding judge should have sustained the *certiorari* to the inferior court, and reversed its decision that counsel fees were not allowable, and that that court should proceed with an inquiry into that matter and make a reasonable allowance for these expenses.

Judgment reversed.