PITTMAN, ordinary, *vs.* GLENN, solicitor-general.

[Jackson, J., did not preside in this case on account of relationship to defendant in error. Judge Pottle, of the Northern circuit, was designated by the governor to preside in his place.]

1. Where fines imposed for offenses, the gist of which was a violation of the Sabbath, had not been appropriated to the use specified, nor

paid to the ordinary therefor, until after the passage of the act of 1875, giving officers a lien on all funds arising from fines and forfeitures for insolvent costs, such lien attached to the fund, and when distributed under order of court, it could not be recovered by the ordinary from the solicitor-general.

2. Whether or not judgments of the court distributing the fund before the act of 1875 were void, can make no difference. If void the fund would, in legal contemplation, have remained in· the hands of the solicitor-general until the passage of the act, when the lien attached.

Officers. Costs. Liens. Laws. Before Judge HILLYER. Fulton Superior Court. October Term, 1877.

Reported in the opinion.

T. P. WESTMORELAND; W. J. SPEAIRS; COLLIER & COLLIER, for plaintiff in error.

JOHN L. HOPKINS, for defendant.

POTTLE, Judge.

At the January term of the superior court a rule was taken out against the defendant, as former solicitor-general, requiring him to show cause why he should not pay to the ordinary of said county certain money, which, it was alleged, was received by him while in office from fines imposed for offenses, "the gist of which consisted in their being committed on the Sabbath day."

In answer to this rule, the defendant showed for cause that he had collected from such fines the sum of five hundred and seventy–eight dollars and ten cents. That at each term of said court judgments were rendered by the court allowing insolvent costs to him and clerk, and other officers entitled to participate in these funds. These judgments included all fines from all sources. That he did make the appropriations according to said several judgments, and that after paying his predecessors in office considerable sums of money, the amounts of which are set out with precision, he has now a large insolvent account allowed him by the court.

He further shows in his answer, that on divers occasions

while he was in office, he offered to pay to the said Pitman, ordinary, all of the money arising from fines imposed for offenses the gist of which was the violation of the Sabbath; and that he refused to receive it, saying that the law did not allow the Sunday–schools to have it, and directing him, the respondent, to appropriate it to the payment of insolvent costs. That, upon his refusal to receive it, he, respondent, paid it out under judgments of the court. Defendant furthermore states, in his answer, that if said ordinary had *then* received it, he could have replaced it from moneys which he had paid out to others on their accounts. That if he is now required to pay it, being out of office, h e has no means of reimbursing himself.

This answer was not traversed. The presiding judge discharged the rule, and the plaintiff excepted.

The question for decision in this court is, was the defendant, on the facts set forth in his answer, liable for such fines, which he collected and which were imposed by the court, for the violation of Sunday laws.

The Code, §4582, provides that all moneys arising from fines imposed for offenses, the gist of which consists in their being committed on the Sabbath day, shall be paid to the ordinary of the county, to be by him distributed for the purpose of establishing and promoting Sabbath-schools in the county.

In 1875, the general assembly passed the following act: "That the officers of the court shall have a lien upon all funds arising from fines and forfeitures, for the payment of their insolvent costs, before any specific appropriations shall be made of said funds for purposes of Sunday-schools or other educational purposes."

Now, the view which we take of this case is, that the defendant's lien on this fund for his costs attached, and could not have been lost until there had been an appropriation of this particular fund to the ordinary for the purposes named in the Code. The court had the custody of the fund, and

while in its custody, and before any act had been done look-ing towards an appropriation of it to the public, it was distributed by the judgment of the court.

It is said that it was not competent for the legislature in 1875, to pass an act reaching back to the time when these transactions took place. The principles decided by this court in *Gresham vs. Rickenbacher*, 28 *Ga.*, 227, were quite analagous to this case. In that case proceedings had been initiated to have property es-cheated which belonged to the estate of Jacob Streman. Pending these proceedings the legislature passed an act vesting the property of the deceased—he being an illegitimate, and leaving no widow, child, or children—in the half-brother and sister of the deceased. The power to make this law was called in question in that case, and this court held that it was competent for the legislature to pass an act vesting property before *office found*.

Assuming it to be true, as contended by counsel for the plaintiff, that the judgment of the court distributing the fund was void, this legal consequence would follow : that the fund would be, in contemplation of law, still in the hands of the solicitor up to the time of the passage of the act of 1875, and the case obviously within the principle of the case cited in 28 *Ga.*; thus the lien of the officers at-tached, as there had been no appropriation of the particu-lar fund.

The judgment of the court in discharging the rule is affirmed.

Judgment affirmed.