## OSLIN *v.* STATE OF GEORGIA *et al.*

PER CURIAM. The petition in this case alleges that the deceased died leaving no heirs at law, and that, except for a false, fraudulent, and invalid will, the deceased died intestate, by reason of which the property he left became, under the law of escheat, the property of the State of Georgia, and the proceeds thereof should be paid to the treasurer of the educational funds of Troup County, Georgia, to be used for educational purposes in said county. The alleged will had been proved in common form. The State of Georgia, through its proper officers, filed the petition in this case, to require the alleged executor of the instrument purporting to be the last will of the intestate to prove the same in solemn form. In this petition valid grounds of caveat were set up. *Held:*

1. Under the allegations of the petition, the State of Georgia has such an interest in the property of the alleged testator as entitles it to require the probate of this alleged will in solemn form, and to caveat the probate of the instrument upon the grounds set out in its said petition. Otherwise the State would be wholly without remedy to have this property declared escheated. *Duggan* v. *Lamar*, 106 *Ga.* 855 (33 S. E. 43); *Hooks* v. *Brown*, 125 *Ga.* 122 (53 S. E. 583); *Churchill* v. *Neal*, 142 *Ga.* 352 (82 S. E. 1065); *Ezell* v. *Mobley*, 160 *Ga.* 872 (129 S. E. 532); Redfearn on Wills, 210, § 117; Donovan *v.* Second Judicial District, 25 Mont. 325 (65 Pac. 120). Nothing to the contrary of what we hold is ruled in *Duggan* v. *Lamar*, 110 *Ga.* 470 (35 S. E. 670).

2. Applying the above principle, the court below did not err in overruling the demurrer to the petition.

*Judgment affirmed. Russell, C. J., and Gilbert, J., dissent. The other Justices concur.*

No. 4785. FEBRUARY 27, 1926.

Probate of will. Before Judge Roop. Troup superior court. January 29, 1925.

*F. P. Longley* and *M. U. Mooty,* for plaintiff in error.

*George M. Napier, attorney-general, W. Y. Atkinson, solicitor-general,* and *Lovejoy & Mayer,* contra.

GILBERT, J., dissenting. The superior court erred in overruling the demurrer to the petition filed by the State of Georgia et al. The demurrer should have been sustained. It was not made to appear in the petition that the property "had apparently escheated to the State;" the petition did not allege that there was pending any proceeding on the part of the State or the board of education of Troup County to escheat the property, though the brief of counsel and the motion for rehearing treat the case as if such escheat

---

Escheat 21 C. J. p. 852, n. 62, 63, 64, 65; p. 854, n. 90, 91, 92, 93, 3; p. 855, n. 4, 5, 8, 19, 20; p. 857, n. 51.

Wills 40 Cyc. p. 1232, n. 25.

proceedings were pending. We are forced to consider the case on the record, and can not consider statements aliunde. Also, there was no allegation that the judgment probating the will was obtained by fraud. Without an allegation that proceedings to escheat were pending, and with the positive allegation that the decedent had left a will which had been probated in common form, and the executor named in the will having qualified and taken possession of the property, it appears that the petitioners have no interest which would entitle them to file a petition in the court of ordinary to set aside the judgment probating the will. The argument is legitimately made, that under this ruling the State could not intervene for the purpose of showing escheat in any case where a decedent has left a will. That may be true. But it is argumentum ab inconvenienti. If the present legislation is not sufficient to enable the State to escheat the property in all proper cases, the remedy is additional legislation rather than for this court to render a decision contrary to the well-recognized principle that one who has no interest therein may not interpose an objection to the probate of a will disposing of property.

RUSSELL, C. J., dissenting. As appears from the record, Allen Gilmore Jr., colored, a resident of Troup County, Georgia, died in that county on June 30, 1924, leaving an estate consisting of about $4000 cash in bank, and real estate in the City of LaGrange worth about $7500. On July 7, 1924, his will was probated in common form, and Charles Oslin, the named executor, duly qualified as such and took possession of the property of the estate. On November 11, 1924, the State of Georgia "through counsel for the State of Georgia representing Hon. Clifford Walker, Governor, J. Q. Burton, J. T. Hairston, L. L. Smith, H. H. Lane, and J. D. Walker as comprising the board of education of Troup County; and T. G. Polhill as superintendent of education of Troup County and ex-officio treasurer of the public-school fund of Troup County, represented by Geo. M. Napier, attorney-general of the State of Georgia, and Wm. Y. Atkinson, solicitor-general of Coweta Circuit, filed a petition with the ordinary, calling upon said executor, Charles Oslin, to probate said will in solemn form; and at the same time filing a caveat to said will. Attorneys Lovejoy & Mayer also appeared as attorneys for caveators. To the caveat the executor filed his answer, and offered said will for probate in solemn

form in response to the notice served upon him." By consent the case was appealed to the superior court of Troup County. Counsel for the executor filed a motion to dismiss the caveat, in the nature of a general demurrer, upon the grounds: "(1) That there are no facts pleaded by the caveator establishing an escheat in this case; and until an escheat has been established the caveator can not be made a party, and the caveat should be dismissed. (2) The State of Georgia can not call upon an executor to probate a will in solemn form, and contest the probate thereof, after the will has been probated in common form. (3) There is no provision by which the caveator can contest the probate of a will." The trial judge overruled the motion to dismiss the caveat, and exception was taken to this judgment. The State of Georgia, through Clifford M. Walker as Governor, the named members of the board of education, the superintendent of education of Troup County, the attorney-general and the solicitor-general of the Coweta Circuit are named as defendants in error in the bill of exceptions.

For a proper adjudication of the issues to be determined in this case it might not be unprofitable to consider the meaning of the term "escheat" as applied to the State of Georgia, and when property may be said to have apparently escheated to the State, and the method and mode by which property which may be subject to be escheated may be taken into possession of the State. Originally, escheat was an incident of feudal tenure. In England it antedated the invasion of the Normans in 1066, but was not substantially affected thereby. In England the escheat was always to the lord of the fee, "which would be to the king only where the tenant was a tenant in capite. In the absence of a mesne lord the escheat is to the crown. Personal property found in England belonging to a person dying intestate and without heirs and domiciled in another country goes, not to the government of his domicile, but to the crown as bona vacantia." 21 C. J. 852, § 6. See Atty.-Gen. v. Mercer, 8 App. Cas. 767; Burgess v. Wheate, 1 Eden, 177, 28 Reprint, 652; 4 Kent's Com. 424, 426. But no aid can be drawn from English cases in determining when there may be said to be an escheat, or as to the proceeding by which that determination shall be reached, for the reason that in the United States there are no feudal tenures, and property escheats, if at all, directly to the State as the sovereign power within whose jurisdiction it is

situated. *Beatty* v. *Benton*, 73 *Ga.* 187, s. c. 135 U. S. 244 (10 Sup. Ct. 747, 34 L. ed. 124) ; Hamilton *v.* Brown, 161 U. S. 256 (16 Sup. Ct. 585, 40 L. ed. 691). Reference to the *Beatty* case is of historical interest and as an illustration of the effect of applying the broad principles of equity, but otherwise the only ruling in the case pertinent to our present inquiry is the authoritative statement that there is no escheat in this State in the sense in which that term is used in England. The English law of escheat was not adopted under the provisions of the general judiciary act of 1799, because by the act of 1797 the law upon that subject had already been superseded. However, by the terms of section 2 of the act approved February 25, 1784 (Cobb's Digest, 721), which adopted the laws of force in England on May 14, 1776, generally, it was provided that all fines and forfeitures inflicted or made payable to the King of Great Britain, "are hereby directed to be paid into the public treasury of this State, for the use of the same; and that all authorities given and enjoined by any of said acts to any public officer are hereby given and enjoined to such public officers appointed under the constitution or form of government established in this State, and agreeable to the same."

Several statutes with relation to escheat were passed by the General Assembly prior to the adoption of the Code. As codified, these statutes are embraced in sections 4155 to 4169, inclusive, of the Code of 1910. As provided in section 4155: "Escheat is where, upon failure of heirs, the estate of an intestate falls to the State. In no other case does an estate escheat in Georgia." This was taken from section 2 of the act approved December 5, 1801 (Cobb's Digest, 250), and the original language of the section is: "Where it shall appear that any person has died without will and without heirs, leaving property behind, . . it shall be the duty of the escheator of the county in which such person shall have died, to make inquiry of all the estate . . of which the deceased died seized and possessed, and to notify the same in writing to the escheator of every other county in which the said deceased, at the time of his death, may have held or ⸱ been possessed of any estate, . . and thereupon it shall be the duty of the escheator of the county in which such person shall have died, and of every other escheator so notified as aforesaid, to make a true and just statement of all the property so far as comes to ⸱his knowledge,

which the said deceased may have been seized and possessed of in his county, and notify the same to the judge of the superior court, at least two months previous to the meeting of said court in such county, and the judge presiding at such court shall cause the jury (being first sworn) to proceed and make a true inquest of all such supposed escheated property . . which by the escheator shall be submitted to their investigation, and a true verdict make thereon." We refer to the provision in section 2 of the act of 1801 for the reason that it points out the procedure by which the existence of an escheat is to be determined, with a provision for the disposition of the property in accordance with the finding of a jury as to the particular issue disconnected from any other question than that of escheat. Section 4157 of the Code of 1910 declares that the escheator, so soon as he shall obtain possession of the estate as administrator, shall make known to the ordinary of the county the fact that the same has apparently escheated to the State; whereupon the ordinary shall pass an order requiring said administrator to advertise by publication in one or more papers in this and other States, according to the circumstances of each case, notifying all persons interested as next of kin of such deceased persons of the facts and date of his death, the amount of the estate, and the pendency of proceedings to escheat the same, which publication shall be continued for six months. The code section then provides that if no person appears within twelve months, claiming as an heir, the ordinary shall pass an order declaring the property escheated. This code section was likewise taken from section 2 of the act of 1801, supra, as modified by the act of 1805 (Cobb's Digest, 252) and the act of 1817 (Cobb's Digest, 254).

Having shown that the common law, as it prevailed in England prior to May 14, 1776, included several reasons for escheat other than that provided in the code section above cited, it is our opinion that it must next be held that our law has provided a specific proceeding by which it is to be determined whether the estate of a deceased person has fallen to the State as sovereign because he died not leaving a will and because he left no heirs, and that this remedy is exclusive. Counsel for both parties refer to a dearth of authorities, and it is stated by counsel for the defendants in error that the question presented is perhaps one of first impression in this State, though counsel rely upon a decision

from the Supreme Court of Tennessee (State *v.* Lancaster, 119 Tenn. 638, 105 S. W. 858, 14 L. R. A. (N. S.) 991, 14 Ann. Cas. 953), which it is insisted should control this case and result in an affirmance of the judgment of the lower court. In the present case Allen Gilmore, the deceased, left a will. It is in sisted by counsel for the defendants in error, that, though the paper in question had been probated in common form and the named executor had qualified as such, the will was in fact void for several reasons stated in the caveat interposed in behalf of the State. Section 4155 of the Code uses the words "the estate of an intestate," instead of the words in the original act, "any person who has died without a will." It is true that the language adopted by the codifiers was justified for the sake of brevity, and in a certain sense an intestate is naturally one who dies without a will. But the latter language taken from the act can be used to ascertain the precise thought in the mind of the General Assembly which passed the act of 1801, and therefore to remove all doubt based upon any contention as to the meaning of the word "intestate" as applied to escheats. An intestate generally means one who has died leaving no will. In the case at bar the judgment of the court of ordinary, a court of original jurisdiction as to the probate of wills, in admitting the will to probate in common form and in qualifying Oslin as executor of the estate of Gilmore, has pronounced that judgment that the paper probated comes within the requirements imposed by law, and permits the executor to act as such unless and until it is successfully impeached. In other words, the probate in common form raises a presumption that it is a valid will; and therefore, so far as a proceeding to escheat is concerned, the fact that the decedent left no will can not be sustained.

The State is not in a position to assert that there "is apparently an escheat." On the contrary, apparently there is no ground or reason for escheating or forfeiting the property, or for depriving its former owner of the right of making such disposition of his own property as he sees proper. "A will is the legal expression of a man's wishes as to the disposition of his property after his death." It must be borne in mind that in all the early statutes in this State provision was made for an escheator. It was first

the clerk of the superior court, then the clerk of the court of ordinary, and later (Act of 1836) the administrator; but an escheator, in imitation of English law, has in all of the statutes been considered an essential. However, the great current of authority sustains the proposition that the State can not be a party to the caveat of a will or an application for administration, nor can the State intervene in any proceeding affecting the administration of an estate. In 21 C. J. 854, § 10, it is said: "Where the estate is claimed on the ground of a defeasible title in the adverse claimant, there must be a judicial proceeding, or other notorious act equivalent thereto; and some form of proceeding is necessary where there is an adverse claimant in possession, although the proceeding may not be essential to the vesting of the State's title." "Under the English common law the lord recovered his possession of the escheated property by means of a writ of escheat" (citing Black's L. D.; Fitzherbert Nat. Brev. 143). . . "The proceeding to enforce an escheat is in the nature of an inquest of office" (citing Atlantic R. Co. v. Mingus, 165 U. S. 413, 17 Sup. Ct. 348, 41 L. ed. 770). "The procedure is now generally regulated by statute, and when so regulated the escheat must be established in the manner prescribed, and all the requirements of the statute substantially be complied with." 21 C. J. 854, § 11. "The question of jurisdiction is usually regulated by the statutes providing for the enforcements of escheats." Ib. 855, § 12. To support this principle the case of *Brooks* v. *McEachern, 73 Ga.* 54, is cited. In that case it was held, sustaining the principle that a proceeding to escheat must be the statutory proceeding provided, and that the proceeding is one in the nature of an inquisition, that "The court of ordinary has original and exclusive jurisdiction over the subject of escheats. The ordinary is not ex-officio the escheator; but upon inquisition in that court, the administrator is converted into the escheator, and is accountable in that character to the party entitled." The *Brooks* case was a bill in equity brought for the purpose of escheating the estate of a deceased. It appears in that case that the question of intestacy was not involved, as it is here. In the *Brooks* case there was an administrator. The court held that the administrator had the right to proceed, because section 4157 of the Code provides that "the administrator

shall make known to the ordinary of the county the fact that the same has apparently escheated," and thereupon the publication and other proceedings provided shall ensue. As said by Mr. Justice Hall in the *Brooks* case, "Upon inquisition found in the court over which he presides, the administrator is converted into the escheator, and is accountable in that character to the party entitled. Code [1882], §§ 2671, 2672, and citations thereunder, together with those in general note at end of chapter."

We think therefore that the motion to dismiss the caveat to the will in the case at bar should have been sustained. In the administration of estates the executor may for all purposes, where the title of the decedent is involved, be treated just as if he were an administrator and accordingly is subject to the same liability. But if there is an adverse claim to property in his hands, upon the ground that the property is that of the State, the State's right of possession must be established in the manner prescribed in the act of 1801, as it subsequently has been amended and as incorporated in the Code. It seems to us that the decision in the case of *Duggan* v. *Lamar,* 110 *Ga.* 470 (supra), is controlling without the aid of authority from foreign jurisdictions. That was a case where, as in this, the county school commissioner of Hancock County attempted to intervene in an interpleader brought to determine who were the heirs of a decedent, so as to assert that none of the defendants were heirs, but that the estate had escheated to the State; and this court held that in such a proceeding the State could not set up an escheat. The principle upon which that decision is based is certainly applicable in the case at bar. In the *Duggan* case the commissioner sought to obtain possession of the estate by asking leave to show that there were no heirs; but this court said nay. The estate being at most only apparently escheated, and there not having yet been obtained a judgment or decree of escheat, you will not be heard. In the present case, in a proceeding to probate the will in solemn form, the State asserts that it is a proper party to show (it being immaterial in this case whether the deceased, Allen Gilmore, had heirs or not) that there was no valid will, and therefore the estate has escheated because there are no legal heirs. It is insisted that the State had such an interest in the case at bar as authorized its

intervention in the court of ordinary. If, as held in the *Duggan* case, the State had no interest until in a proceeding brought for the purpose it was judicially ascertained that Babcock, the deceased, had no heirs, how can it be held in this case that the State has an interest, when it has not been determined whether Allen Gilmore had legal heirs or that his will is invalid? In delivering the opinion of this court in the *Duggan* case, Mr. Justice Lewis said: "M. L. Duggan, as county school commissioner of Hancock county, filed a motion before the court to be made a party to said petition, and to answer and plead to the same. The ground of his motion was, that as county school commissioner he was treasurer of the school fund of said county; that the deceased died without heirs; that there were no distributees of said estate, except movant, who was entitled to receive it as such school commissioner. The motion denies that any' of the parties defendant named in the petition are heirs at law of Babcock, or are in any way related to him, or interested in the estate. Upon objection by counsel for defendants in the case the motion was overruled, and to this ruling of the court error is assigned in the bill of exceptions. The evident object of the administrator's petition was to ascertain by an adjudication of the court which ones, if any, of the several parties who claimed to be heirs of the deceased, were his rightful heirs; and he therefore asked that they be called upon to interplead and have this issue determined. The interpleader, it seems, was ordered, and answers were filed by the several defendants named in the petition. Plaintiff in error asked to be made a party to this proceeding, alleging that the deceased died without any heirs, and therefore the estate had escheated. He claims the estate under section 3578 of the Civil Code, which declares: 'The proceeds of escheated property shall be paid, in each county, to the ordinary, or other treasurer of the educational fund of such county, to become a part of such fund.' We do not think this gives him a right to become a party to this proceeding, which was instituted simply to determine the rights of certain parties claiming to be heirs. Even if it should be determined that none of the claimants were heirs, this would not necessarily result in an adjudication that the estate had escheated. Section 3577 of the Civil Code provides: 'The escheator, so soon as he shall obtain possession of the estate as administrator, shall make known to the

ordinary of the county the fact that the same has apparently
escheated to the State; whereupon the said ordinary shall pass an
order requiring the said administrator to advertise, by publication
in one or more papers in this and other States, according to the
circumstances of each case, notifying all persons interested as next
of kin of such deceased person, of the facts and date of his death,
the amount of the estate, and the pendency of proceedings to
escheat the same, which publication shall be continued for six
months. If no person shall appear and claim, as heir, within
twelve months from the date of the first publication, the ordinary
shall pass an order declaring the said property escheated to the
State. If any person claims the property alleged to be escheated,
the claim shall be interposed and tried as claims at administrator's
sales.' . . Section 3579 declares: 'In all trials arising in ref-
erence to escheated property the solicitor-general shall be ex-officio
counsel for escheator.' There is no equitable reason set forth in
the motion for interpleader why the movant should be made a
party to this case, and the issue it presents as to whether or not
the deceased died without any heirs at all can not be adjudicated
in the proceeding for interpleader instituted by the administrator
in the superior court. The county school commissioner, even if
the suit pending in the superior court should result in a finding
that none of the claimants were heirs, would of course not be en-
titled to the assets of the estate; for proceedings would first have
to be instituted in accordance with the provisions of the law on
the subject of escheats, above mentioned."

Paraphrasing the words of Judge Lewis, we hold that the county
school commissioner, suing in the name of the State, even if the
probate of the will should result in avoiding the paper claimed to
be such, would not of course be entitled to the assets of the estate,
for proceedings would first have to be instituted and adjudicated
as provided by law relating to escheats, as embodied in the code
sections cited. But if we go to authority merely persuasive in its
character, it has been held, in State *v.* Simmons, 46 Or. 159 (79
Pac. 498), State *v.* O'Day, 41 Or. 495 (69 Pac. 542), Com. *v.*
Palmer, 6 Weekly Notes Cas. (Pa.) 486, In re McClelland, 27 S. D.
109 (129 N. W. 1037, Ann. Cas. 1913C, 1029), State *v.* Black, 21
Tex. Civ. App. 242 (51 S. W. 555), as cited in 21 C. J. 855, § 15,
that "Escheat proceedings for defect of heirs can not be prosecuted

pending an administration of the estate," and these decisions but strengthen our conclusion and the reasoning of Judge Lewis in the *Duggan* case, supra, that the statutory method provided by law for establishing an escheat must be followed. It is true that in Pennsylvania, Montana, and Tennessee it has been held that the State can interpose ·in the probate proceedings; but the ruling in the *Duggan* case, supra, will not authorize us to prefer to this ruling of this court merely persuasive authority from a foreign jurisdiction, such as the cases just referred to, or the Tennessee case cited by the defendants in error. After pointing out the statutes of the various jurisdictions and the substantial differences between them, it is said in 21 C. J. 856, § 20, that "Some statutes set out specifically what allegations the information must contain, and these requirements must be complied with." In *Gresham* v. *Rickenbacher*, 28 *Ga.* 227, and *Smith* v. *Gentry*, 16 *Ga.* 31, it has been held that escheat proceedings must be instituted by an escheator. Section 4157 of the Code of 1910 denominates the administrator as the escheator where apparently there is an intestacy. For the reasons already stated, where there is apparently a will, the executor would be the escheator, provided the State established in the probate proceeding that the property had in fact escheated to the State. The only case that we have been able to find holding that the State may contest a will is that of State *v.* Lancaster, supra, upon which the defendants in error rely, and which is cited in 21 C. J. 855, note 20b. The only other cases which we have been able to find in our own reports which refer to the subject of escheat are those of *Vickery* v. *Benson*, 26 *Ga.* 582, and *Sutton* v. *McLeod*, 29 *Ga.* 589; but nothing held in either of them conflicts with what we have held in this case, in view of the fact that the point raised ·in this case was in·neither of them before the court for adjudication.