## 36068. ROLLESTON v. STATE OF GEORGIA et al.
## 36069. STATE OF GEORGIA et al. v. ROLLESTON et al.

UNDERCOFLER, Chief Justice.

This case presents our first review of the Shore Assistance Act of 1979. Code Ann. § 43-3001 et seq., Ga. L. 1979, p. 1636, eff. April 25, 1979. The constitutionality of the Act and the jurisdiction it establishes are among the questions raised.

Sea Island has been experiencing erosion of its beaches over the past decade. During the past year it has

become increasingly severe. Efforts to arrest the erosion near 35th and 36th streets[1] resulted in the building of a rock wall in that area in early 1979. The Shore Assistance Act became effective April 25, 1979, and, after that date, a state permit was required for further erosion control. In July, Rolleston made the first application under the Act, for permission to build a vertical steel interlocking bulkhead with a concrete cap similar to that built by the Navy during World War II in front of the King and Prince Hotel on St. Simons Island. Rolleston intended to put his wall on his own property.

Sea Island Properties, Inc., also applied to build a thirty foot wide sloping rock revetment from 4th to 31st streets, along the escarpment formed by the waves, part of which would be below the high water mark and, thus, on state property. *State v. Ashmore*, 236 Ga. 401 (224 SE2d 334) (1976). Some of the property owners did not want to build walls in front of their property. Mrs. Charles Nunnally also requested permission to build a bulkhead behind an existing rock revetment, which also required repairs.

In August, the Department of Natural Resources Shore Assistance Committee, Code Ann. § 43-3009 (Supp. 1979), denied Rolleston's application and granted Mrs. Nunnally's and Sea Island's on condition that continuous walls be constructed from 4th to 18th streets and from 18th to 31st streets. Therefore, individual owners, except Mrs. Nunnally, could not build their own walls without the agreement of the others. Rolleston appealed under the Act,[2] Code Ann. § 43-3012 (Supp. 1979), resulting in a supersedeas of Mrs. Nunnally's and Sea Island Properties' permits. Rule 391-2-2-.05(6)(a).

Hurricane David and higher-than-normal tides predicted for September and October prompted the Department of Natural Resources to promulgate an

---

[1] Streets on Sea Island run east/west from the Cloister Hotel north to 36th Street.

[2] Since questions of law are involved as well as an emergency situation, we here pretermit the exhaustion of administrative remedies question.

emergency rule suspending the supersedeas of the permits pending Rolleston's appeal, so that seawall construction could begin. Rule 391-2-2-.12. The individual lot owners desiring walls applied for permits to protect themselves, without the need for continuous walls. These permits were granted by the Shore Assistance Committee in September.

Rolleston then filed this action for injunctive relief. An interlocutory injunction was denied and Rolleston appeals. We affirm Case No. 36068.

As part of the proceedings below, the trial court fixed the Committee's jurisdiction under the Act by defining the "tree line." The state also appeals the trial court's ruling on this point in Case No. 36069, which we reverse.

1. Rolleston contends that the Shore Assistance Act of 1979 is unconstitutionally vague because the jurisdiction established under the Act is difficult to apply. He cites the record, containing the conflicting views of the Department of Natural Resources, Sea Island's landscape director, and the engineers employed by Sea Island, as well as the trial court's own interpretation of the location of the tree line, to support his claim.

"The area of jurisdiction of [the Act] shall be: (a) The dynamic dune fields on the barrier islands of this State; and (b) the submerged shoreline lands of this State from the seaward limit of this State's jurisdiction landward to the dynamic dune fields . . ." Code Ann. § 43-3004 (Supp. 1979). " 'Dynamic dune field' means the dynamic ocean-facing area of beach and sand dunes, varying in height and width, the ocean boundary of which extends to the ordinary high-water mark and *the landward boundary of which is the first occurrence of either live native trees 20 feet in height or greater,* or coastal marshlands . . . or an existing structure." Code Ann. § 43-3003 (i) (Supp. 1979). (Emphasis supplied.) It is the location of the tree line, the western boundary of the Act's jurisdiction, that Rolleston claims renders the Act too vague to be constitutional. We disagree.

The Act is clear and unambiguous. The tree line is determined by locating the easternmost 20 foot tall live native trees along the beach. We construe "native tree" to mean any tree, indigenous to the area, whether it sprang

up naturally or was planted. We note that this was the method employed by the Department of Natural Resources in establishing its jurisdiction. See *Bentley v. Chastain,* 242 Ga. 348 (249 SE2d 38) (1978). In doing so, the department employees actually measured and mapped the 20 foot or taller trees along the beach and the existing structures, and sought points that were not an unreasonable distance apart. This produced a zig-zag line along the shore forming the western jurisdictional boundary of the Act.

We find this method rationally related to the purpose of the Act, which is to protect a vital, but unstable, natural resource of this state. A native tree at least 20 feet tall marks an area that has been stable for a reasonable period of time. It is, however, a moving line; the testimony in this case is that some of the trees used on September 9, 1979, to mark this line have since fallen into the ocean.[3] Thus an area, stable for a long time, is now becoming unstable. As such trees fall into the ocean, the line must be moved back to the next qualifying tree. Thus, the newly unstable area remains under the jurisdiction of the Act so that the erosion problem may be treated as a whole. We hold, therefore, that the Shore Assistance Act of 1979 is not unconstitutionally vague.

This ruling also decides the issue on cross appeal raised by the state in Case No. 36069. The trial court erred in holding that the tree line should be determined in a manner different than that used by the Department of Natural Resources.

2. Rolleston also urges that the Shore Assistance Act of 1979 is unconstitutional because it constitutes a taking of property without just compensation, citing Pennsylvania Coal Co. v. Mahon, 260 U. S. 393 (1922). Rolleston, however, is not entirely deprived of the value and practical use of his property as in the Mahon case. On the contrary, the Act is a valid land use regulation well

---

[3] We note further that this line is not subject to manipulation because clearing vegetation and landscaping within the Act's jurisdiction require permits. Code Ann. §§ 43-3005(a), 43-3003(r).

within the ambit of legislative authority. 1978 Ga. Const., Art. III, Sec. VIII, Par. IIIA; Code Ann. § 2-1404; *Pope v. City of Atlanta,* 242 Ga. 331 (249 SE2d 16) (1978).

3. Rolleston next argues that the Act was unconstitutionally applied in granting the other permits and denying his. Basically, he claims it's his property and he should have the right to erect whatever type of seawall, if any, he desires. This is clearly not so. The necessity of regulation by the state stems from the fact that the sand, both on and off shore, constitutes an interacting network, which can be affected by even slight changes anywhere in the system. Code Ann. § 43-3002 (Supp. 1979). Rolleston's permit application was denied because the type wall he wished to build does not protect the beach as much as possible by diffusing the wave energy.[4] We find this reason comports with the Act[5] and DNR regulations, and is well supported by the evidence in the record. We hold that the denial of Rolleston's permit, while granting the others, is not arbitrary or discriminatory, and does not amount to unconstitutional action by the Shore Assistance Committee.

The Committee's requirement that there be continuous walls is rendered moot by the subsequent emergency rule eliminating this requirement. See Division 4, infra. The Shore Assistance Committee did not abuse its discretion in granting the other permits and in denying Rolleston's, and the trial court did not err in so holding.

4. The Department of Natural Resources emergency rule is challenged by Rolleston as denying him due process of law. We disagree. By resolution, DNR

---

[4] The Committee's minutes reflect that "previous revelations to the Committee of scientific data [show] that a bulkhead is most destructive of beach areas if used alone — that has been accepted by the Committee, . . ."

[5] Code Ann. § 43-3007 (c) (3) (E): "In the event that shoreline stabilization is necessary, either low-sloping porous granite structures or other techniques which maximize the absorption of wave energy and minimize shoreline erosion shall be used; . . ."

superseded its rule granting an automatic stay of its permits pending Rolleston's administrative appeal, because of the dire situation on Sea Island in September, 1979, after Hurricane David. Rolleston claims that a retroactive application of the resolution to him denies him due process. Rolleston's attacks have been entertained here and resolved against him. The due process complaint is therefore moot.

5. Rolleston argues that the state has no right to issue revocable licenses. The state owns the foreshore to the high water mark. *State v. Ashmore,* supra. Permission from all affected property owners is required by the Act as part of an application. Code Ann. § 43-3006(d) (Supp. 1979). Under Code Ann. § 91-402, "[t]he Governor shall have general supervision over all property of the State, with power to make all necessary regulations for the protection thereof, when not otherwise provided for . . ." Pursuant to this authority, revocable licenses[6] were issued. In addition, the General Assembly clearly contemplated that under the Act, the Shore Assistance Committee could issue permits involving the state's property. E.g., Code Ann. §§ 43-3003 (r), 43-3005, 43-3009 (b) (Supp. 1979). As we have already held, the permitting power has been validly exercised by the Shore Assistance Committee. Divisions 1, 2, 3, supra.

6. Rolleston's final argument is that the federal law has pre-empted any regulation of the beaches to the high water mark. Since he has raised this issue for the first time on appeal, we decline to rule on its merits. Compare Code Ann. § 43-3007(g) (Supp. 1979); Montgomery v. Portland, 190 U. S. 89 (1903).

*Judgment in Case No. 36068, affirmed; judgment in cross appeal, Case No. 36069, reversed. All the Justices concur, except Bowles, J., who concurs in the judgments only.*

---

[6] Governors Carter and Busbee have designated James B. Talley, an official of the Department of Natural Resources, to issue revocable licenses regarding the state's beach property, which convey no fee interest, but grant "mere personal privileges," "revocable at any time."

582

ARGUED MARCH 10, 1980 — DECIDED APRIL 8, 1980.

*Moreton Rolleston, Jr.,* for appellant (Case No. 36068).

*King & Spalding, Charles H. Tisdale, Jr., Charles L. Gowen, Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Alston, Miller & Gaines, James S. Stokes, IV, Dickey, Whelchel, Miles & Brown, Tom Whelchel, James B. Gilbert, Jr.,* for appellees (Case No. 36068).

*Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General,* for appellants (Case No. 36069).

*Moreton Rolleston, Jr., Charles L. Gowen, Charles H. Tisdale, Jr., James S. Stokes, IV, Tom Whelchel, Bennett, Gilbert, Gilbert, Whittle, Harrell & Gayner, James B. Gilbert, Jr.,* for appellees (Case No. 36069).