## 36850. GOODYEAR v. TRUST COMPANY BANK et al.

CLARKE, Justice.

The preservation of the beaches on Georgia's coastal islands and the efforts to arrest erosion on these beaches has been the subject of litigation for several years. This is another case which places in issue the rights of property owners and the State of Georgia to erect and

maintain the structures along the edge of these beaches, which structures are designed for the purpose of controlling erosion. The erosion problems as they exist on Sea Island, Georgia, the location in question in this litigation, were described in *Rolleston v. State of Ga.,* 245 Ga. 576 (266 SE2d 189) (1980).

The present case arose when the plaintiff filed his complaint against twelve defendants seeking declaratory relief, injunctive relief and damages from the defendants on the ground that their participation in the construction of erosion control structures interfered with his rights as a Sea Island property owner to recreational easements as well as easements of ingress and egress. A non-jury trial was conducted and the trial court found for the defendants, granting no relief to the plaintiff. From this judgment the plaintiff, Goodyear, appeals.

Evidence offered at the trial supports the findings of fact of the trial court, the highlights of which will be reported here. All of the beachfront property owners between 9th and 18th Streets on Sea Island have constructed sloping rock revetments on the edge of the beach in an effort to control erosion. Two of the owners in this area have had the revetments in place since 1975 and the remaining revetments have been constructed between October, 1979, and January, 1980. Express approval of the Sea Island Company and Sea Island Properties was given for all of this construction and all of the revetments built after the enactment of the Shore Assistance Act of 1979, Code Ann. § 43-3001, et seq. (Ga. L. 1979, p. 1636), were built pursuant to permits granted by the Shore Assistance Committee. A portion of the revetments in the 9th to 18th Street area lie on the foreshore, the area between the high and low water, often referred to as the "hard sand beach." The remaining portions lie on the soft sand beach. Between 4th and 8th Streets on Sea Island, all of the property owners have built a sloping concrete wall on the edge of the beach, with the wall being located partially on the foreshore and partially on the soft sand beach. This wall was also built with the approval of Sea Island Properties and the State of Georgia pursuant to Shore Assistance Committee permits.

The rock revetments and concrete walls run approximately parallel to the water line of the ocean and extend onto the beach for only a short distance. Approximately ten to fifteen feet of the lateral portion of the rock revetment is above ground on the edge of the beach and the extension of the sloping concrete walls is approximately the same.

The Sea Island Company and/or Sea Island Properties built a sloping concrete wall at the edge of the beach next to the Sea Island Beach Club in the early 1960's. In 1979, this wall was extended north

to 4th street. As is the case with the other walls and revetments, a portion of this wall is on the foreshore and a portion is on the soft sand beach. The wall was also built pursuant to a license issued by the State of Georgia and the newly extended wall was built after the issuance of a permit by the Shore Assistance Committee.

A number of streets which run perpendicular to the beach dead end at or near the beach between 4th and 18th streets. After the revetments and sloping walls were constructed, walkways and cross-over structures have been built from the end of each of these streets to the beach itself. The walkways built into the walls and cross-over structures over the revetments provide easy access to the beach by any person, even a person in a wheelchair. Prior to the erection of the rock revetments and sloping concrete walls, the beach was separated from the upland property by a vertical sand bluff several feet in height along the area between 4th and 18th Streets. Access to the beach from this vertical sand bluff was by jumping down or crawling down. At the time of the trial of this case, plaintiff William Goodyear owned a house on Sea Island beach on the north side of 35th Street with direct and unencumbered access from his house to the beach on Sea Island. This house is located approximately one and one-half miles from the houses of the defendant property owners closest to him.

Goodyear contends that the property owners, the State of Georgia and the developer of Sea Island have interfered with his rights to utilize the beach and three parks which were included on early plats prepared for the developer. In an effort to secure the rights he claims, Goodyear filed this action seeking injunctive relief, declaratory relief and damages.

Two plats of survey were prepared for earlier owners of Sea Island for the purpose of subdividing it in order that it might be developed. The first of these plats was the work of J. A. Blanton on behalf of St. Simons-Long Island Company which held record title to the island in 1923, the date of the plat. The second plat was prepared by F. J. Torras for Sea Island Company in 1928. At that time, Sea Island Company owned those portions of Sea Island which had not been conveyed away by its predecessor in title. Each of these plats contained a recital in which the owner reserved the title to and right to control and regulate the use of all the land comprising the beach and area between the high and low water on the Atlantic Ocean and Hampton River. When parcels of land were conveyed by the early owners to various individual property owners, they were described by reference to either the Blanton or Torras plats and the property owners involved in this case, including Goodyear, all hold title by virtue of a chain which extends back to these early owners.

Having recited the pertinent facts in the record, it should also be noted that another circumstance has found its way into this case which should be considered by the court. Sea Island Properties, Inc., one of the defendants, asserts that during the pendency of this appeal plaintiff Goodyear has conveyed all of his property on Sea Island to Charles Title. Goodyear denies that the deed has been delivered, but an affidavit filed by Sea Island Properties recites that Title has applied for and received a permit from the Shore Assistance Committee to build a rock revetment east of his property. Sea Island Properties contends that Title accompanied his permit application with a copy of the deed from Goodyear.

1. The possibility that Goodyear no longer owns real estate on Sea Island raises the question of whether his prayers for injunctive and declaratory relief have now become moot. This court will not consider moot appeals or hypothetical questions. "This court will upon its own motion dismiss an appeal where it affirmatively appears that the questions presented have become moot or that a decision would be of no benefit to the complaining party." *Gober v. Colonial Pipeline Co.,* 228 Ga. 668 (187 SE2d 275) (1972); see also, *National Council of Jewish Women v. Cobb County,* 247 Ga. 198. (1981); *Mooney v. Mooney,* 200 Ga. 395 (37 SE2d 195) (1946); *Nye Odorless Incinerating Corp. v. Felton,* 172 Ga. 792 (159 SE 267) (1931).

If Goodyear no longer owns land on Sea Island, all his claims for injunctive relief and declaratory judgment based upon his status as a landowner would now be moot. Defendant Sea Island Properties has raised an issue of this ownership by asserting that Goodyear has executed and delivered a deed to a third party. Goodyear denies that any delivery has been taken. As a result, a factual issue exists which must be determined in the trial court. Therefore, the question of Goodyear's title is remanded to the trial court for determination.

The holding in this division leaves only the prayers for damages and any claim that Goodyear could bring in his capacity as a private citizen to be determined.

2. Appellant contends that he is entitled to both compensatory and punitive damages against the defendants for each day since the construction of the various rock revetments was begun. His claim is based upon the argument that as a property owner on Sea Island he is entitled to a recreational easement, as well as an easement for ingress and egress over the entire soft sand beach, including the area now covered by the rock revetments. Appellant bases this contention on a variety of theories. First, appellant contends that our holding in *Smith v. Bruce,* 241 Ga. 133 (244 SE2d 559) (1978), establishes that property owners on Sea Island, as owners of lots in a beach subdivision, obtained a property right or easement of use in the beach

area, including both the hard beach insofar as legally possible and the soft sand as well. In *Smith v. Bruce,* this court, following the reasoning in *Stanfield v. Brewton,* 228 Ga. 92 (184 SE2d 352) (1971); *Harrison v. City of East Point;* 208 Ga. 692 (69 SE2d 85) (1952); and *Westbrook v. Comer,* 197 Ga. 433 (29 SE2d 574) (1944), found that where the developer of a beach subdivision sold lots with the deed containing reference to a plat showing the Atlantic Ocean and where the deeds recited that certain lots were bound on the east by the Atlantic Ocean, that developer granted an irrevocable easement to the beach areas to the property owners. There is a crucial difference between the High plat involved in the *Smith v. Bruce* case and the Torras and Blanton plats involved here. The High plat made no reservation as to any portion of the area between Beach Drive in East Beach Subdivision and the smooth hard beach. In the Torras and Blanton plats, on the other hand, an express reservation was made not only as to use but as to title as well in the soft sand beach. While the developer of Sea Island must have allowed an easement for ingress and egress to the ocean itself, and while access must now be allowed to the foreshore found to belong to the state, under *State of Ga. v. Ashmore,* 236 Ga. 401 (224 SE2d 334) (1976), the Torras and Blanton plats do not indicate any intent on the part of the developer to create a recreational easement as to the entire soft sand beach as contended by the appellant. We, therefore, hold that the deeds in Goodyear's chain of title conveyed no easements to the soft sand portion of the beach.

3. Goodyear also argues he has a right to use the soft sand beach and that the revetments and walls are unauthorized because they were constructed by persons who did not own the adjacent land. In support of this argument, he offered evidence that a break occurred in the chain of title during the early history of this nation and that the last record title holder before the break left no heirs at law. He then reasons that all of the land constituting Sea Island escheated to the state. For several reasons, we cannot agree with this position.

Under Code Ann. § 38-637, "A prima facie case shall be made out in actions respecting title for land upon showing good record title for a period of 40 years, and it shall not be necessary under certain circumstances to prove title to the original grant from the state." The presumption created by this statute cannot be overcome by merely showing the existence of a break in the chain of title coupled with an assertion that the last record title holder prior to the break had no heirs at law. The law of this state specifically establishes a means by which the determination of the existence of such heirs for the purposes of escheat can be made. Escheat is a statutory right in this state which must be accomplished through a specific procedure.

Code Ann. § 85-1101, et seq. Escheat proceedings must be brought in the name of the state by a designated officer. *Oslin v. State of Ga.,* 161 Ga. 967 (132 SE 542) (1925). No such proceedings have been instituted by the state in this case and, therefore, the title of Sea Island has not escheated to the state. Even if escheat had occurred, this fact would not entitle Goodyear to complain as to the existence of the walls and revetments. This is true because these structures were built with the consent and permission of the state itself. The state has a vital interest in the preservation and management of the coastal sand dunes, beaches, sandbars and shoals which comprise a vital natural resource of this state. We conclude that the state moved to protect this interest by granting the various permits for the construction of the barriers involved here.

4. Goodyear further contends that the permits in question are void and the structures built pursuant thereto are illegal because of a failure to obtain the necessary permits from the United States Corps of Engineers under the terms of the Rivers and Harbors Act of 1899, 33 USCA § 401, et seq. In its findings of fact, the trial court concluded that unrebutted evidence shows that the Corps of Engineers indicated it was claiming no jurisdiction in this instance. It was also found that the issue of the Corps of Engineers' jurisdiction is the subject of a separate lawsuit pending in the United States District Court for the Southern District of Georgia. This court is not in a position to force upon a federal agency jurisdiction which it is not willing to claim.

We, therefore, affirm the judgment of the trial court, except as to declaratory and injunctive relief sought. These issues are reserved until the trial court, upon remand, determines the status of the title to the land now or formerly owned by Goodyear.

*Judgment affirmed in part, remanded for further proceeding in accordance with this opinion. All the Justices concur, except Marshall, J., who is disqualified.*

DECIDED MARCH 12, 1981.

*Moreton Rolleston, Jr.,* for appellant.

*King & Spalding, Charles H. Tisdale, Jr., Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Alston, Miller & Gaines, James S. Stokes IV, Dickey, Whelchel, Miles & Brown, Tom Whelchel, Bennet, Gilbert, Gilbert, Whitte, Harrell & Gayner, Thomas C. Benedict, W. Colquitt Carter,* for appellees.