41382. ROLLESTON v. SEA ISLAND PROPERTIES, INC. et al.
(327 SE2d 489)

BELL, Justice.

In 1980 appellant Rolleston filed this action, seeking declaratory and injunctive relief and damages on the grounds, inter alia, that the appellees, through the construction of seawalls and other means, had interfered with his rights to recreational easements as well as easements of ingress and egress to certain parts of Sea Island. He also alleged that, due to erosion, accretion, and avulsion, he was the owner of the soft sand beach between his lots and the Atlantic Ocean. The trial court held that the latter issue was to be decided by a jury, but granted summary judgment to appellees on the other issues. Rolleston appeals, and we affirm. The record developed in the present case consists largely of the record and transcript from the cases of *Goodyear v. Trust Co. Bank,* 247 Ga. 281 (276 SE2d 30) (1981), and *Rolleston v. State,* 245 Ga. 576 (266 SE2d 189) (1980). Most of the facts relating to this case are set out in those opinions, and we will therefore only supplement them in the present case where necessary to address a particular issue.

1. Relying on *Smith v. Bruce,* 241 Ga. 133 (1) (244 SE2d 559) (1978), Rolleston claims that as a property owner on Sea Island he is entitled to a recreational easement to the soft sand portion of the beach. Rolleston acknowledges that in our decision in *Goodyear v. Trust Co. Bank,* supra, 247 Ga. at 284-285, we distinguished *Smith v. Bruce,* supra, and held that Goodyear, a Sea Island property owner, had not been conveyed a recreation easement to the soft sand beach. Rolleston argues, however, that *Goodyear,* supra, is distinguishable from the present case on the ground that the reservations contained in the Blanton and Torras plats, although applicable to the *Goodyear* case which was decided in 1981, expired in 1982 under the provisions

of OCGA § 44-5-60 (b). We disagree. Rolleston's reliance on OCGA § 44-5-60 (b) is misplaced.[1] In *Goodyear v. Trust Co.*, supra, 247 Ga. at 285, we focused on whether the intent of the parties at the time of the conveyances to determine whether any recreational easement had been conveyed. In that case, we found that the Torras and Blanton plats, as opposed to the High plat in *Smith v. Bruce*, supra, did not indicate any intent on the part of the developer to create a recreational easement to the entire soft sand beach. Here, our focus has not changed, and we still conclude, as we did in *Goodyear*, supra, that no recreational easement to the soft sand beach was conveyed.

2. In his first enumeration of error Rolleston argues that the trial court erred in not declaring that the general public has the right to use certain Sea Island streets, and the extensions thereof, for ingress to and egress from the public beach below the mean high water mark. Specifically, he refers to those streets which run perpendicular to the beach and dead end at or near the beach. Rolleston contends that as a member of the general public, he has this right of ingress and egress.

For the following reasons, however, we need not decide the issue of the exact nature of the general public's right of access to the foreshore on Sea Island.[2] Here, the appellees have not denied Rolleston access to either the soft sand beach or the foreshore. See, e.g., *Goodyear v. Trust Co. Bank*, supra, 247 Ga. at 283. Moreover, no member of the general public who may have been denied access was made a party to this action. Therefore, " '[n]o facts or circumstances were alleged to show any necessity for a determination of any dispute to guide and protect the plaintiff [Rolleston] from uncertainty and insecurity with regard to the propriety of some future act or conduct which is properly incident to his alleged rights and which future action, without such directions, might reasonably jeopardize his interest." *Krause v. City of Brunswick*, 242 Ga. 659 (2) (251 SE2d 239) (1978). There is thus no controversy to be decided, and we decline to issue an advisory opinion on the matter. See *St. John's Melkite Catholic Church v. Commr. of Revenue*, 240 Ga. 733 (1) (242 SE2d 108) (1978).

3. Since Rolleston did not acquire a recreational easement to the soft sand beach, and since he has not been denied access to the soft sand beach or to the foreshore, we find no merit to his seventh enumeration of error, in which he contends that the trial court erred in

---

[1] OCGA § 44-5-60 (b) is clearly inapplicable to the reservation of title in the Blanton and Torras plats, see *Hendley v. Overstreet*, 253 Ga. 136, 137 (318 SE2d 54) (1984), and we need not decide whether OCGA § 44-5-60 (b) applies to the reservation in the Blanton and Torras plats of the right to control the use of the soft sand beach.

[2] As to the state's ownership of and the public's general right of access to the foreshore, see *State of Ga. v. Ashmore*, 236 Ga. 401 (224 SE2d 334) (1976); *Lines v. State*, 245 Ga. 390, 397 (264 SE2d 891) (1980); *Goodyear v. Trust Co. Bank*, supra, 247 Ga. at 285.

not concluding that the seawalls interfered with his asserted easement rights as a matter of law.

4. Rolleston makes two arguments with regard to three areas of Sea Island designated on the Blanton plat as Sapelo, Jekyll, and Long Island Parks. One contention is that these parks are public parks, which he, as a member of the general public, has a right to use. Rolleston's other contention is that, as an owner of property conveyed pursuant to the Blanton plat, he acquired an easement by grant over these parks.

Between 1923 and 1926 the St. Simons-Long Island Company conveyed approximately 290 lots, including lots 1072 and 1073, which are now owned by Rolleston. It also conveyed Sapelo and Jekyll Parks to Glynn County on October 16, 1923. These lots were sold with reference to the Blanton plat. In March 1928 the Sea Island Company (the St. Simon-Long Island Company's successor) acquired ownership to all of Sea Island, except the lots and parks (Sapelo and Jekyll) which had been previously conveyed by its predecessors in title. The Torras plat, prepared for the Sea Island Company, continued to show the existence of Sapelo and Jekyll Parks, but the area designated as Long Island Park on the Blanton plat was not designated as such on the Torras plat; however, a triangular area in its vicinity was designated a "park." In 1951 Glynn County conveyed back to the Sea Island Company both Jekyll and Sapelo Parks. In exchange, the county received property located on St. Simons Island which it has developed into Massengale Park.

a. Assuming that Rolleston and his predecessors in title acquired an easement to the parks in question, see *Smith v. Bruce*, 241 Ga., supra; *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976), we find, nevertheless, that Rolleston is estopped from asserting this right. An easement may be extinguished by estoppel if the owner of the servient tenement acts inconsistently with the continued existence of the easement, and such action is taken in reasonable reliance upon conduct of the dominant owner evidencing an intent on the part of the dominant owner not to make use of the servient tenement in the future. Restatement of the Law, Property, § 505 (1944); Powell on Real Property, Vol. 3, § 425 (1984). Two other important factors are whether the owner of the dominant tenement might reasonably have foreseen the servient owner's reliance and consequent actions, and whether the restoration of the easement to the dominant owner would cause unreasonable harm to the owner of the servient tenement. Restatement of the Law, Property, supra, § 505; Powell, supra, § 425.

In the instant case, Jekyll and Sapelo Parks have never been used by Rolleston, his predecessors in title, or other property owners of Sea Island. Sometime after 1951 the Sea Island Company began to subdivide Jekyll Park for the purpose of development, and more re-

cently has done so with Sapelo Park. It is apparent that it did so in reliance upon the property owners' conduct. All the lots within these two parks have now been sold; Jekyll Park is now fully developed with houses and landscaping on each lot, and all but several lots in Sapelo Park have had homes built on them. Much of this development was submitted to and approved by the Glynn County Zoning Commission. All this occurred while the property owners, who presumably witnessed this development, and who could have reasonably foreseen the reliance on their conduct, sat idly by. Moreover, under the circumstances presented here, it would be unreasonable to restore to Rolleston and other property owners the use authorized by the easement. Many persons have acquired lots, built homes, and landscaped their property. To restore the recreational easement sought to be imposed by Rolleston would place an unreasonable hardship on them. See Restatement of the Law, Property, supra, § 505, comment f; *Picconi v. Carlin*, 123 A2d 87 (3) (1956).

For the above reasons, we find that, as a matter of law, the trial court correctly granted summary judgment to the appellees on this issue.

b. Rolleston also contends that the Sea Island Company dedicated Jekyll and Sapelo Parks to public use, and that he, as a member of the general public, has a recreational easement in these parks.

It is clear that the Sea Island Company's predecessors in title expressly dedicated Jekyll and Sapelo Parks to the public use by designating these areas as parks on the Blanton Plat and by conveying the land to Glynn County by deed in 1923. *Smith v. State*, 248 Ga. 154, 159 (282 SE2d 76) (1981). We also find that the conveyance to Glynn County constituted public acceptance of the land. See *Smith v. State*, supra, 248 Ga. at 158.

Jekyll and Sapelo Parks, however, were not used by the public up to 1951, at which time the county reconveyed the parks to the Sea Island Company. Moreover, following that conveyance, no member of the public has attempted to use the parks, or objected to the Sea Island Company's development thereof. As has already been noted, all the lots in these parks have been sold, and houses have been built on all but a few. Under these circumstances, the public has clearly abandoned any easements it may have had. OCGA § 44-9-6.

c. Rolleston further alleges that he acquired an easement to Long Island Park as a property owner and also as a member of the general public. Since 1923, on the area designated as Long Island Park on the Blanton Plat, the Sea Island Company and its predecessors in title have constructed a beach club, a gazebo, offices, retail shops, two swimming pools, shrubs, walkways, and paved areas. In the trial court Rolleston sought declaratory relief to the effect that he was entitled to use the areas of Long Island Park which *had not* been developed.

There is no evidence, however, that Rolleston has been denied access to or the use of those areas. Absent such evidence, we decline to address this contention. See *Krause v. City of Brunswick,* supra, 242 Ga. at 661.

5. Rolleston contends that the trial court erred in not concluding that he owns the western one-half of an area designated on the Blanton Plat as "Ocean Avenue," which was shown on that plat as abutting his property on the east, and the eastern one-half of Ribault Lane, which abuts his property on the west.

" 'According to the better authorities, the bounding of a tract by the edge or margin of a road will pass the fee to the middle line of the road when the vendor owns the fee on both sides.' " *State of Ga. v. Ashmore,* 236 Ga. 401, 414 (224 SE2d 334) (1976) (quoting *Johnson & Co. v. Arnold,* 91 Ga. 659, 667 (18 SE 370) (1893)). With regard to Ribault Lane, there is no controversy in this suit over the title thereto. We therefore decline to address this issue. *Krause v. City of Brunswick,* supra, 242 Ga. at 661.

However, a more difficult problem is presented with regard to "Ocean Avenue," which on the Blanton Plat consisted of the area between the eastern property lines of the beach lots and the Atlantic Ocean. We find the reasons underlying the rule in *Johnson,* supra, 91 Ga., and therefore the rule itself, to be inapplicable to the instant case. The *Johnson* rule is based on the theory that the parties to the conveyance generally intend that the grantee obtain title to a street designated as bounding his land. *Johnson,* supra at 666-667.

Here, however, Sea Island Company's predecessor in title, by express language on the Blanton Plat, reserved the title and right to control the area designated as Ocean Avenue. "That which is most material and certain in a description prevails over that which is less material and certain." *Harrison v. Durham,* 210 Ga. 187 (5) (78 SE2d 482) (1953). We find that the express reservation of title to the entire beach in the plat should control over the general designation of the beach as "Ocean Avenue." This is especially true since, in view of the fact that "Ocean Avenue" encompassed the soft sand beach and the foreshore, it could not reasonably be concluded that a road was intended to cover this entire area.

For the foregoing reasons, we now conclude that the deeds in Rolleston's chain of title did not convey title to the centerline of "Ocean Avenue."[3] This conclusion is consistent with our holding in *Goodyear,* supra, 247 Ga. at 285, that the reservation of title in the

---

[3] In *State v. Ashmore,* 236 Ga., supra, we found that the foreshore belonged to the state. Therefore, Ocean Avenue could now only encompass the soft sand beach; however, for purposes of discerning the intent of the parties at the time of the conveyance, we look to the designation of Ocean Avenue as it then existed.

Blanton Plat meant that no recreational easement to the soft sand beach was conveyed.

6. In his sixth enumeration of error, Rolleston argues that all of the land constituting Sea Island escheated to the state and that, therefore, seawalls constructed on the soft sand beach must be removed because they were built by people who did not own the adjacent land. *Goodyear v. Trust Co. Bank*, supra, 247 Ga. at 285-286, however, controls this issue adversly to Rolleston.

*Judgment affirmed. Hill, C. J., Clarke, Smith, Gregory, and Weltner, JJ., and Judge Curtis V. Tillman concur. Marshall, P. J., disqualified.*

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Moreton Rolleston, Jr.,* pro se.
*J. Thomas Whelchel, James B. Gilbert, Jr., Thomas G. Benedict,* for appellees.