41649. CHERRY et al. v. HOPKINS et al.
(328 SE2d 702)

PER CURIAM.

Appellants, Cherry and Mobley, filed for declaratory judgment in the Superior Court of Glynn County, seeking title to or a recreational easement in certain beachfront property. The trial court granted appellees' motion for summary judgment as to title to the land and denied appellants' motions for summary judgment regarding title and easements. Appellants raise five enumerations of error. We reverse.

In July of 1911, R. R. Hopkins and J. H. Hopkins purchased 28 acres of beachfront property on St. Simons Island. They subdivided the land and had a plat, the High Plat, drawn and filed. Lots 26-49 faced the Atlantic Ocean and were separated from the water by Beach Drive, which appears on the plat but has never been built. In October of the same year, they sold the land to B. S. Walker, Sr.

In May 1925, the Agricultural Land Company, Inc., owned by the Hopkins family, reacquired the subdivision. In 1925 or 1926, the Hopkinses dynamited and dammed East Beach Creek, a tidal creek that ran from west to east and entered the ocean to the north of lot 49, the northernmost lot. The closing of the creek caused the beach to

build up to the east of the property.

In 1926, the company had the property resurveyed and had the High Plat amended. On the new plat, the beachfront lots numbered 43-49 were split, and new lots numbered 52-59 were created between the original lots and Beach Drive out of portions of the original lots and the accreted land. The high water mark on this plat, the First Torras Plat, showed all of lots 55 and 56 and parts of lots 48-54, lots 57-59, and Beach Drive covered by water at the mean high tide.

The Hopkins family, in 1928, amended the First Torras Plat to show the high water mark as the eastern boundary of Beach Drive. This plat, the Second Torras Plat, showed lots 52-59 bordered on the east by Beach Drive which was, in turn, bordered on the east by the high water mark. The high water mark has continued to move to the east, and now there are nine acres of land, the subject of this suit, to the east of appellants' lots 52-57.

1. We must determine, construing the evidence in favor of appellants, who oppose the motion for summary judgment, whether appellees have produced evidence conclusively negating appellants' claim to title. *Turner v. Noe*, 127 Ga. App. 870 (195 SE2d 463) (1973).

The various plats show accretion occurring between 1911 and 1928. When appellees' predecessors in title amended the High Plat in 1926, they actually set out lots which were covered by water at high tide. As the beach filled out those lots, they drafted the Second Torras Plat to show the high water mark bordering, rather than bisecting, the platted land.

Under this evidence, appellants possess title to all of the accretions to their land formed between 1911 and 1928. These accretions simply created or filled out the beachfront lots shown in the two Torras Plats and sold by the Agricultural Land Company to appellants' predecessors in title. This summary judgment question thus revolves around title to accretion occurring *after* 1928 when the Second Torras Plat was filed.

Title to land accreting to a road bordering a beachfront subdivision generally follows title to the property bordered by the road.[1] *State of Ga. v. Ashmore*, 236 Ga. 401, 414 (224 SE2d 334) (1976). Thus, if the new land accreted to Beach Drive[2] after appellants' predecessors in title purchased their lots from the Agricultural Land Company, appellants would be entitled to the accretions. Appellees have not conclusively negated the possibility that appellants could prove

---

[1] This case is apparently not distinguishable from *Ashmore*, as *Rolleston v. Sea Island Co.*, 254 Ga. 183 (327 SE2d 489) (1985) was. Here, we find no express reservation of title to the roadway by the original vendor.

[2] That is to say, if the high water mark moved eastward from Beach Drive. See *Smith v. State of Ga.*, 248 Ga. 154 (282 SE2d 76) (1981).

that the accretion in question occurred after the Agricultural Land Company sold the various lots.

The plats show a pattern of eastward accretion that could establish accretion during the time between the final subdivision and the sale of the lots, but we may not make such a presumption on appellees' motion for summary judgment. The various deeds contain restrictive covenants prohibiting construction between the lots bordering Beach Drive and the low water mark. The covenants, construed in favor of appellants, could simply show that the foreshore lay between the lots in question and the ocean. One deed from the Agricultural Land Company states that it does not convey riparian rights, but that deed identifies the lot granted in reference to the First Torras Plat which shows the lot to be underwater at high tide.[3]

As this evidence leaves open the possibility that appellants could prove at trial that the accretions formed, at least in part, after the lots in question had been granted to their predecessors in title, summary judgment was inappropriate in this case. *Turner,* supra. We thus do not need to reach the issue, which might itself involve questions of fact, of the intentions of the original vendor and vendees regarding any accretions which might have built up on Beach Drive after the final subdivision had occurred but before any lots were sold.

2. In view of the fact that the trial determining title to the land might render the recreational easement issue moot, we will not reach that issue at this time.

*Judgment reversed. All the Justices concur, except Gregory and Bell, JJ., who dissent. Weltner, J., not participating.*

DECIDED APRIL 16, 1985.

*Moreton Rolleston, Jr.,* for appellants.
*Thomas J. Lee, Hansell & Post, W. Rhett Tanner,* for appellees.

---

[3] This could be termed a riparian liability.