## JOHNSON & COMPANY v. ARNOLD.

1. Where one owning in fee a tract east of, and extending up to the lands of an adjacent proprietor on the west, conveyed in fee a part of his tract, describing in the deed the boundary of the parcel conveyed as running to and then with a certain road on the east side of the adjacent proprietor's lands (meaning thereby that the road was or was to be on and along the west margin of the tract), and there was in fact no such road, and never had been, the vendee took the fee in so much of the contemplated road as according to the deed bounds the parcel conveyed, and the vendor retained nothing but the right to construct, maintain and use a road at the place designated. A like right would exist in the vendee also, the right being mutual in both parties and not exclusive in either. Under a similar state of facts similar consequences resulted from a subsequent conveyance by the same vendor of another parcel of his original tract, north of and adjoining the parcel formerly conveyed, the deed last made describing the boundary as commencing at a stone corner in the edge of "the road," and running thence around three sides of the parcel, then back to the so-called road, and thence with said road to the starting point.
2. In the present case the vendor was not the owner of the stone quarried, after the conveyances were made, from the contemplated

site of the so-called road, and had no right to recover the value of the stone or to recover for any damage done to the freehold. His interest being confined to a mere right of way, with rights incidental thereto, he could recover only for damage, if any, done to his easement or some of its incidents.

3. Where a private way is used by a trespasser, without impeding or interfering with the owner's free and full use of it during the same period, the ordinary measure of damages is the injury done to the way or to the land by the wrongful use, including any increase occasioned thereby in the cost of repairs, the way not being a turnpike or other road kept for tolls or let for profit.

May 8, 1893. Argued at the last term.

Before Judge Richard H. Clark. DeKalb superior court. February term, 1892.

Arnold sued Johnson & Company, alleging: He is the owner of a strip of land, part of land lot 158 in the 16th district of DeKalb county, the strip being twenty feet wide, bounded on the west by lands of the Georgia Railroad & Banking Company, south by a public road, east by lands of Georgia A. and Sarah V. Kinney, north by lands of petitioner. Johnson & Company since July 24, 1890, have been quarrying and getting paving-blocks on this land without his consent and after he had notified them to stop, and are appropriating the stone to their own use and wholly destroying the land or rock for the use of a road; and are driving over and using his lands, in hauling stone and other material over and across his land, over his protest. He asked for damages and for injunction. Defendants claimed under deeds from plaintiff to Georgia and S. V. Kinney and from Georgia A. Kinney to Almand & George. There was a verdict for plaintiff for $200; defendants' motion for new trial was overruled, and they excepted. The motion contained the grounds, that the verdict was contrary to law and evidence, and contrary to the court's charge, that if Arnold deeded to the Kinneys land to a road and in fact there was no road there, then the Kinneys' title was good to the land of the Georgia Railroad & Banking

Company, and Arnold would not be entitled to recover. Also, that the verdict was contrary to the charge on the measure of damages; movants claiming that the evidence was clear that they acted under a claim of right, having leased from Almand & George and the Kinneys the land in dispute, and claiming that the evidence clearly showed that the value of the stone taken from the ground claimed by Arnold was only about $31 when taken out.

The court charged thus: "In reference to the road, it is not necessary that every road should be a public road; it is not necessary that every road should be a private way, as it is understood in the law. A man may have a road over his land; and if there was a road there and the boundaries in the deed to Mrs. Kinney were to that road, it would go to that road and go no farther; it would not go even to the middle of the road, because it is neither a public road nor a private way established by the law." This was alleged to be error, because there was no evidence that the road was there, the deeds introduced showing no certain boundaries of any road and all the evidence showing no road nor semblance of the same; and because the charge did not state the law correctly. There were two deeds made by plaintiff to Georgia and Sarah V. Kinney. One of them, dated November 13, 1883, conveyed ten acres, part of land lot 168, bounded as follows: commencing at stone corner in edge of road dividing lands of Georgia Railroad Company and Sarah V. and Georgia Kinney, thence east alongside of the land of said Kinneys to Arnold's fence, thence north with said fence to a certain stone corner on Arnold's line, thence west along Arnold's line to said road as above mentioned, thence with said road to starting point. The second was dated April 30, 1883, and conveyed twenty-five acres of land lot 168, with the following boundaries: beginning at a stone corner on Arnold's land in the edge of a certain road on west side

of J. T. Brand's land, thence west to a certain road on east side of lands of Georgia railroad, thence south with said road to public road from Lithonia to Conyers, thence east with said road to road on west side of J. T. Brand's land, thence south to starting point. The strip of land in dispute was between the land claimed by plaintiff to be the land he deeded to the Kinneys, and the land of the Georgia railroad. The deed of Georgia Ann Kinney to Almand & George, under which deed defendants claim, conveyed to the land of the Georgia railroad.

The court charged, that if defendants acted in good faith, the measure of damages would be whatever the blocks were worth at that time, less the expense of the labor of turning the rock into blocks. This was alleged to be error, because the amount so found would include the profit of the contractor and value of superintendence and skill, and was confusing to the jury and in opposition to the further charge of the court when stating that the royalty value was the true measure of damages; and because the charge did not state the law correctly.

The court charged that if the use of roads was a commodity, plaintiff would be entitled to recover whatever the use of the road that lay over his land was worth to defendants. This was alleged to be error, because in a suit for damages to land, the true measure of damages is not what it is worth to the party using, but how much the use by defendants damages plaintiff, and there was no evidence going to show bad faith in use, and there was evidence showing permission by plaintiff; and because the charge incorrectly states the law.

The court charged, that the jury could find the value of the blocks at the time of conversion; which was alleged as error, the evidence being that defendants in quarrying the rough stone acted under a claim of right, and that at the time of conversion the stone was worth only about $31.

The court refused to charge, upon requests of defendants, that "the measure of damages in this case is the actual injury which the value of plaintiff's land has suffered by reason of the entry upon the land and actions thereon." And, "possession under color of title of land for seven years, peaceable, open and uninterrupted, gives title." And, "where land is conveyed as bounded by a road, the grantee takes title to the middle of the road, if there is no express provision to the contrary in the deed."

Another ground was, that plaintiff was permitted to testify, over defendants' objections, that he thought when he was selling the land he was selling it to Kinney, and as to an understanding between him and Kinney as to strip reserved. The objection was, that Kinney was not a party to the deed, that it was not shown that Mrs. or Miss Kinney knew anything about this understanding, that the deed was the best evidence as to the intention of the parties to it and as to what was conveyed by it, and that Almand & George, who owned a half undivided interest in this land, could not be bound by an understanding with Mr. Kinney. Also, that the court allowed Arnold to testify as to actions of himself and Kinney at the time of the sale of the land, as to putting up stakes twenty feet from the line of the Georgia railroad. The objection was, that this was an effort to go outside of the deed made and drawn by Arnold, to show title to this strip, that the deed was the best evidence, and that what was done in the absence of Mrs. and Miss Kinney, between Arnold and Kinney, could not bind them, nor Almand & George who held under Mrs. Kinney. As to these two grounds, the brief of evidence discloses that Arnold was permitted to testify: When I sold to the Kinneys I thought I was selling to Mr. Kinney. When the deeds were to be made out, I found that they were to be made to his

wife and minor daughter. I wrote both the deeds. It was understood between Kinney and myself that this twenty foot strip was to be reserved by me for road purposes. We put up a stake at each end of the land, showing where it extended. These stakes were put twenty feet east of the Georgia railroad land at the end next to Conyers road. The line between my land and Georgia railroad land was original land line. This land sold to Kinneys was intended to go to a point twenty feet from Georgia railroad line. Several years after I sold land to Kinneys, I think in December, 1886, I found that a fence had been put up along the Georgia railroad line. I went to Mrs. Kinney and told her that if she would have the fence moved off she could have the rails. She claimed that she had bought the land from me. I got her the deeds to her, and she agreed to have the fence moved. I think this was after stock law went into effect, etc.

The court permitted Arnold to testify as to the amount of the belgian blocks the quantity of stone claimed to have been taken by defendants would have made, and the value of said blocks. This testimony was objected to, on the ground that if Arnold was entitled to recover in this suit, he could only recover the actual value of the stone, the royalty value, and not what it was worth as belgian blocks, nor for anything else.

The court admitted in evidence two written notices, over objections that the evidence showed that work had been done before the date of either of them, and that they were otherwise irrelevant to the issue and tended to improperly influence the minds of the jury. One of these notices was dated July 25, 1890, directed to defendants and signed by plaintiff, and stated, that defendants were then quarrying stone on plaintiff's land, twenty feet of land east of Georgia railroad, etc., the title to which plaintiff held; and defendants were noti-

fied to desist from further use and trespass on the land and from further use or trespass on the stone on the land, without first making agreement with plaintiff about the use of the property. The other was dated July 24, 1890, signed by plaintiff and directed to defendants, and stated, that the rock upon which defendants were working was plaintiff's rock, bought and paid for by him, and the deed had never passed out of him; that he therefore asked them not to work upon his rock; that if this request were complied with, they would show their regard for him and his property; otherwise he would search for his legal remedy.

Arnold testified: I went to Johnson & Company when they were working on the rock at the corner of this strip. They had the holes drilled in the rock, but they had not moved any of the rock off at that time, and none of it was made into blocks. I told them the strip of land was mine, and they told me they had rented it from Almand & George and Kinney, and that Almand & George were good and were behind them. I gave them notice and served a written notice on them to quit.—Johnson, one of defendants, testified as to the notices: When Arnold gave notice I was sick in bed. I afterwards saw two notices. Mr. Arnold gave me no notice to quit. I was sick at home at the time. It was an advantage to us to go down hill as we might better work the quarry we had leased from the Georgia railroad. This land line is an original land line; and I say this to show that we were over this strip when Arnold gave us notice.—Coffee, another of defendants, testified: When Arnold brought me notice I told him we had leased from Almand & George and Kinney, that they were responsible, and for him to see them. At the time we had crossed the strip claimed by him as road.—Another witness testified corroborating Coffee as to having crossed the strip and got on to the Georgia railroad land

before Arnold gave notice.   There was other testimony
to the same effect.

CANDLER & LEE, for plaintiffs in error.
GEORGE W. GLEATON, *contra*.

BLECKLEY, Chief Justice.

1. The main question involved in this case is one of
much interest and some difficulty.   It is novel in the
jurisprudence of this State, and we rule it by principle
and sound legal analogy and not upon any direct au-
thority.   Various decisions, both English and American,
bearing upon it in some degree, have been examined.
They are not uniform, but point in different directions.
Upon principle, and as best subserving public policy, we
prefer the trend and tendency of those cases which treat a
tract of land having upon its margin a road either public
or private, and either actual or only contemplated, as em-
bracing the fee in the road itself when the tract is con-
veyed and is described in the deed as bounded by the
road, the maker of the deed being at the time of its exe-
cution owner of the fee in the road, and the deed pur-
porting to convey the fee in the tract thus bounded.
Perhaps the strongest reason in favor of this construc-
tion of such conveyances is, that there ought to be some
general and settled rule applicable alike to all convey-
ances which bound the premises by a marginal road,
and the best general rule in behalf of public policy, and
the one most likely to conform to the real intention of
the parties in most instances, is that which we have just
indicated.   It is favorable to the general public interest
that the fee in all roads should be vested either exclu-
sively in the owner of the adjacent land on one side of
the road, or in him as to one half of the road, and as to
the other half, in the proprietor of the land on the op-
posite side of the road.   This is much better than that
the fee in long and narrow strips or gores of land scat-
tered all over the country and occupied or intended to

be occupied with roads, should belong to persons other than the adjacent owners. In the main, the fee in such property under such detached ownership would be and forever continue unproductive and valueless. True it is that the fee in a road or in one half of the breadth of land occupied by a road is generally not of much value to an adjacent proprietor, but it goes to enlarge his holding and probably enhances somewhat the value of his estate; when a detached ownership would usually leave it of no value whatever. At all events, this much may be asserted confidently, that as the fee in roads has to reside somewhere, it is more desirable that it should be in the owners of the adjacent lands than elsewhere. And detached ownership being less desirable, or not desirable at all, any actual intention to establish it in a particular instance, or in the great mass of instances, is less likely to exist than is an opposite intention. When, therefore, the owner of the whole fee in a tract conveys the tract, bounding it by a road, he not owning the land on the opposite side of the road, and not expressly declaring in the conveyance whether he retains the fee in the road or not, may very well be understood as intending to convey the whole tract with the exception of the road as a road merely; that is, as a way public or private, as the case may be. According to the better authorities, the bounding of a tract by the edge or margin of a road will pass the fee to the middle line of the road when the vendor owns the fee on both sides. Upon the like reason, if he owns the fee on one side only, and the whole road is upon the margin of his tract, the proprietor on the opposite side not having any interest in its ownership, a conveyance of the tract as bounded by the margin of the road should, and we think would, pass the fee in the whole road. And as we have already stated, we think it makes no difference in this respect whether the road spoken of in the deed is already in

existence as a way in actual use, or is unopened and only a road in contemplation. To bound land by a road in describing a tract is to say either that a road is already at the location indicated, or that there may be one there hereafter at the pleasure of the vendor or of the vendee, either or both. When a road is mentioned as a boundary, it should generally be understood that the boundary intended is a road as a road or way, and not as embracing the physical substance of the soil in and under the road, all the way down to the center of the earth. In other words, a road as a boundary is the road as an easement, together with such land, or interest in land, as is necessary to full enjoyment of the easement, but no more. To such enjoyment the mere surface of the earth is always essential, and frequently the right to establish and maintain a new artificial surface by excavating in some places and embanking in others.

To discuss the present case in detail, and pass under review all its facts, seems needless. What we have already said, read in the light of the official report and of the first head-note, will suffice in respect to the matter of that note.

2. As a necessary consequence of the construction which we have placed upon the two deeds made by Arnold, it results that he was not the owner of the stone quarried from the site of the contemplated road, and that he could recover for no damage done to the freehold as mere land, but only for such as may have been done to his easement or some of its proper and necessary adjuncts as an easement for present or future enjoyment. For instance, it would be some injury to his property in the easement to render it more expensive to open the road, now or hereafter, than it was when he conveyed, if this was occasioned by mining and removing the stone.

3. The action was in part for the wrongful and unauthorized use of a private way elsewhere situated, which

belonged to Arnold. What the court charged in relation to the measure of damages for this trespass was not correct. We have indicated our own views on this point in the third head-note. The verdict was not what it should have been, and the court erred in denying a new trial.                                    *Judgment reversed.*