## CANTLEY et al. v. GULF PRODUCTION CO. et al.

### No. 5171.

Court of Civil Appeals of Texas. Texarkana.

March 3, 1938.

Rehearing Denied May 5, 1938.

Mayfield, Grisham & Grisham and J. A. Lantz, all of Tyler, and Wynne & Wynne, of Longview, for appellants.

Robert F. Carter, John E. Green, Jr., John Broughton, B. C. Clark, and Joe S. Brown, all of Houston, for appellees.

WILLIAMS, Justice.

Upon consideration of appellants' motion for rehearing we have decided to withdraw our opinion handed down February 17, 1938, and substitute therefor the following opinion:

Appellants, Mary E. Cantley, Polly Timms, and Alberta Tibbs, plaintiffs below, joined by their husbands, being the heirs of John Douglass, deceased, prosecute this trespass to try title action to a 30-foot strip of land situated on the east side of a parcel of land designated as Lot No. 5 in a partition of the Tucker estate, set aside in the decree for a road which was never opened. Appellants specially pleaded title by the ten years statute of limitation which was sustained by jury finding. The Gulf Production Company as the alleged lease-

hold owner, various royalty owners, the fee owner, and the heirs of Tucker, were all made defendants. Ben Laird, the owner of Lot No. 2 which adjoins the land in controversy, intervened. A judgment was entered which denied the appellants and this intervenor any recovery. The intervenor has not prosecuted an appeal.

In 1910 a 668-acre tract of land was partitioned in the District Court of Gregg County among the heirs of M. E. Tucker. The report of the Commissioners containing field notes for each subdivision, and accompanied by a partition map prepared by one J. M. Hoskins, county surveyor, were duly recorded. It is clear from other recitals in the decree and from this map as filed that a narrow strip of land was set apart as a "road reservation" between Lot No. 2 to the east and Lots Nos. 1, 4 and 5 to the west. This decree describes Lot No. 5 to-wit:

"Out of the W. P. Chism survey, beginning 30 feet West of the N. W. corner of Lot No. 2, a stake in Rabbit Creek; Thence S. 25 E. keeping 30 feet from Lot No. 2 for a road reservation 750 varas to the N. E. corner of Lot No. 4; Thence S 81 W 800 vrs. to Rabbit Creek; Thence down said creek to the place of beginning, containing 74 acres."

The entire tract was in the woods at the time of the partition. After John Douglass, the father of these appellants, purchased Lot No. 5 and Ben Laird acquired Lot No. 2, these lands were fenced and placed in cultivation. The fence of Douglass erected about 1913 included the 30-foot strip in controversy which he cultivated, and his possession of it ripened into a ten-year limitation title. A road was never established upon this strip. Douglass opened up a road on this Lot No. 5 which ran west of the strip in controversy and which was used in lieu of the road designated in the partition decree. After the discovery of oil in that community an improved highway was constructed through Lot No. 5 west of the strip in controversy.

The description of Lot No. 5 in the deed wherein John Douglass acquired title and the deed wherein Douglass and the children of his deceased wife conveyed off in 1929, under which last conveyance appellees claim title to this 30-foot strip are the same, and each reads as follows:

"A part of the W. P. Chism sur. and known as tract No. 5 beginning 30 feet West of the Northwest corner of Lot No.

2 a stake in Rabbit Creek; Thence South 25 East keeping 30 feet from Lot No. 2 for a road reservation 750 varas to the Northeast cor. of Lot No. 4; Thence S. to Rabbit Creek; Thence down said creek to place of beginning containing 74 acres of land, described as tract No. 5 in Commissioners' report J. M. Hoskins Co. sur. to District Court of Gregg County, April term A. D. 1910 in the case of Lizzie Crawford et als v. Aurelia Laird et als, * * * which report is on record in Book X pages 178–179 in records of deeds of Gregg County, Texas, for full explanation reference is made to said records."

It is to be noted that the deed executed by Douglass and his heirs called for beginning point to be thirty feet West of the Northwest corner of Lot No. 2 and thence to run South 25 East keeping thirty feet from Lot No. 2 for a road reservation. This, in effect, calls for the West line of this road as the East line of Lot No. 5, or it may be said that it designates this thirty-foot road or strip as the Eastern boundary of said Lot No. 5, or along the West line of said road. It is to be further noted that the deed refers to the tract as being Lot No. 5 and refers to the decree with a plot then of record. This plot shows that the East line of Lot No. 5 fronting on the strip stops at the exterior line of such road reservation and shows the location of this strip of land for a road.

This brings us to a discussion of the construction of a deed conveying a parcel of land situated upon a street, road, or waterway. As stated in 9 Cor.Jur., Sec. 83, p. 195:

"It is the established rule that a conveyance of land bounded on a street or highway carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time owned to the center and there are no words of specific description to show a contrary intent."

We quote from Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R 391, which is applicable to the facts here (page 1084):

"The fact that it appears from the plat that the lines of the lots fronting on the railroad stop at the exterior line of such right of way is not itself sufficient to exclude the conveyance of the title to the center of the railroad. It was expressly so determined in the case of Texas Bitul-

thic Co. v. Warwick, 293 S.W. 160, in which the Commission of Appeals quoted with approval the doctrine announced in 9 C.J. p. 200, as follows: 'The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact that the land is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street.'"

In the instant case this deed expressly made the decree and plot then of record a part of it for full reference. And as stated in 9 Cor.Jur. p. 200, Sec. 92:

"Although the contrary has been held in some jurisdictions, the weight of authority is to the effect that, when land is conveyed by reference to a map or plat by which it is shown to be bounded by a highway, street, or alley, public or private, the grant extends to the center of such highway, street, or alley, in the absence of a clear showing to the contrary, if the grantor owns so far."

And further, as stated in 9 Cor. Jur. Sec. 97, p. 203: "Where a highway is laid off entirely on the owner's land, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee." Snoddy v. Bolen, 122 Mo. 479, 24 S.W. 142, 25 S.W. 933, 24 L.R.A. 507; Johnson v. Arnold, 91 Ga. 659, 18 S.E. 370; Taylor v. Armstrong, 24 Ark. 102, 107; Haberman v. Baker, 128 N.Y. 253, 28 N.E. 370, 13 L.R.A. 611; In re Robbins et al., 34 Minn. 99, 24 N.W. 356, 57 Am.Rep. 40; Cuneo v. Champlin Ref. Co., 178 Okl. 198, 62 P.2d 82; Paine v. Consumers', etc., Co., 6 Cir., 71 F. 626. And it is also immaterial, so far as the title is concerned, that the road was never opened or that it was abandoned. Amerman v. Missouri, K. & T: R. Co., Tex. Civ.App., 182 S.W. 54.

Some of the courts follow this rule of presumption upon consideration of public policy. The court in Bowers v. Atchison, T. & S. F. R. Co., 119 Kan. 202, 237 P. 913, 914, 42 A.L.R. 228, said: "Experience revealed that separate ownership of long narrow strips of land distinct from the territory adjoining on each side, was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation." And, as stated by Chief Justice Bleckley in Johnson v. Arnold, supra (page 372):

"It is favorable to the general public interest that the fee in all roads should be vested either exclusively in the owner of the adjacent land on one side of the road, or in him as to ½ the road, and as to the other half in the proprietor of the land on the opposite side of the road. This is much better than that the fee in long and narrow strips or gores of land scattered all over the country and occupied or intended to be occupied with roads, should belong to persons other than the adjacent owners."

The court in Rio Bravo Oil Co. v. Weed, supra, also followed this same rule of presumption, not upon consideration of public policy as advanced in the two cases quoted from, but as a means of giving practical effect to the real intention of the grantor. And in discussing the last-mentioned rule for the presumption said:

"The use of this presumption is merely the application in a different form of the familiar rule of construction which has always been enforced by the courts, that is, to indulge the presumption that a grantor intends to convey to his grantee all of the appurtenant rights incident to the beneficial enjoyment of property which he has conveyed. In other words, when a person conveys a piece of property abutting upon a public highway or nonnavigable stream it is but natural to assume, in the absence of an express reservation to the contrary, that he intends to convey the same with all of the beneficial rights enjoyed by him in its use. * * *

"We think the legal presumption is sustained by sound reason when it is based upon the fact that valuable rights and privileges appurtenant to property should be presumed to pass in a conveyance thereof in the absence of a clear and unequivocal intention to the contrary."

Douglass acquired a ten-year limitation title to the whole 30-foot strip, and title to the West half of the strip by virtue of the conveyance to him of Lot No. 5. When he and his children conveyed this lot off, this 30-foot strip was situated upon the eastern edge of his land then conveyed by him. He owned no land on further to the East of the strip.

So, construing said deed in the light of the presumption herein discussed, and the conveyance containing no words of specific description to show a contrary intent, the judgment of the trial court denying appellants a recovery of the 30-foot strip is affirmed.