## S00A1268. MDC BLACKSHEAR, LLC v. LITTELL.
### (537 SE2d 356)

SEARS, Justice.

Appellant MDC Blackshear, LLC, appeals the trial court's order permanently enjoining its use of the portion of an alleyway that abuts appellee Robert Littell's property. Having reviewed the record, we disagree with MDC Blackshear's contention that it has private and public rights that entitle it to the exclusive use and enjoyment of the disputed portion of the alleyway. Therefore, we affirm the trial court's granting of injunctive relief in Littell's favor. However, the record supports neither the trial court's award of trespass damages to Littell nor the trial court's assessment of punitive damages against MDC Blackshear. Accordingly, we affirm in part and reverse in part.

In 1994, appellee Littell purchased property on Main Street in Blackshear, Georgia. As described in the chain of title to Littell's deed, his property is bounded on the southwest side by Warehouse Alley, a 17-foot-wide alleyway that runs between Taylor and Main Streets in downtown Blackshear. In 1996, appellant MDC Blackshear bought nearby property (called the "warehouse property," because it is the former site of a tobacco warehouse). The warehouse property sits across Warehouse Alley from Littell's property. The chain of title to MDC Blackshear's deed to the warehouse property makes no reference to the property being bounded by Warehouse

Alley. There is no common grantor with regard to Littell's property and MDC Blackshear's warehouse property.

Also in 1996, MDC Blackshear bought another piece of property that lies to the north of Littell's property (known as the "Bell property" because it is the former site of Bell Network, Inc.). The Bell property and Littell's property are both situated on the same side of Warehouse Alley, but are separated by a small parcel of property owned by a third party. There was a common grantor of Littell's property and MDC Blackshear's Bell property.

MDC Blackshear planned to develop a drugstore on the properties it had purchased, and it intended that Warehouse Alley be used to access a drive-through pharmacy window. Before purchasing the property, MDC Blackshear performed a title search that led it to believe that Warehouse Alley was a public way. MDC Blackshear's research showed that no taxes had been paid on the alleyway for a number of years. The Mayor of Blackshear and the Blackshear City Council indicated to MDC Blackshear that Warehouse Alley was a public alley. The City then gave MDC Blackshear permission to clear and pave the alley. The drugstore building was constructed, and the alleyway was cleared and readied for paving. At that point, Littell filed an action claiming that he owned the portion of Warehouse Alley abutting his property, and seeking to enjoin further construction on that particular portion of the alley.

At the conclusion of a bench trial, the trial court declared that Littell owns fee simple title to the portion of Warehouse Alley abutting his property, and permanently enjoined MDC Blackshear from any further use of that portion of the alley. The trial court also awarded Littell $25,000 for attorney fees and $25,000 in trespass damages, and assessed $50,000 in punitive damages against MDC Blackshear for its "wanton and willful disregard of [Littell's] rights to [his] property."

1. The evidence of record upholds the trial court's conclusion that there had been no public dedication or acceptance of Warehouse Alley. A public dedication requires an offer, either express or implied, by the grantor, and an acceptance, either express or implied, by the public.[1] When, as in this matter, an implied dedication is claimed, the facts relied upon "must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote (it) to a definite public use."[2] The record in this matter does not support such a finding.

Contrary to MDC Blackshear's claim, the designation of the alley

---

[1] *Chandler v. Robinson*, 269 Ga. 881 (506 SE2d 121) (1998).
[2] *Chandler*, 269 Ga. at 882.

as a boundary line on certain plats and deeds pertaining to some of the parties' properties (as explained above) does not indicate an implied dedication of the alley for public use.[3] Moreover, while it is true that a deed to one of MDC Blackshear's predecessors in title to the warehouse property contained a reservation which permitted the predecessor and its successors to use the alley "for so long as a tobacco warehouse may be operated and maintained" on the site, that reservation cannot be characterized as a clear indication of an intention to make a public dedication of the alleyway. Furthermore, since there no longer is a tobacco warehouse abutting the alleyway, that reservation has long since lapsed.

MDC Blackshear argues that before it began to develop its property, both the then-current Mayor of Blackshear and the City Council rendered opinions that the alley was a public way, and indicated that the City was prepared to perform maintenance on the alley, if needed. However, the then-current Mayor's opinion was contradicted at trial by the testimony of a previous Mayor of Blackshear, who testified that during his administration, the alley was never considered to be a public alley. Additionally, it is established that merely by permitting public authorities to perform occasional maintenance on a road or alley, one does not manifest an intention to dedicate the way for public use.[4] Accordingly, this evidence did not compel the trial court to conclude that there had been a public dedication of Warehouse Alley.[5]

The evidence also shows that there has been no public acceptance of the alley. While it appears that taxes have not been paid on the alley for some time, a taxing authority's failure to collect tax revenues owed, standing alone, "is insufficient as a matter of law to

---

[3] See id., 269 Ga. at 883 (even the depiction of a roadway on a Department of Transportation road map does not "ascertain and fix the status of the public right of use" of that road; hence, the depiction of an alleyway on a plat can have no greater import).

[4] *Chandler*, 269 Ga. at 882.

[5] Nor does the reference in the parties' chains of title to a certain plat recorded by a common grantor in the Pierce County Records, and the plat's depiction of Warehouse Alley as a boundary to the Littell property and to MDC Blackshear's "Bell property," give rise to the inference of a public way, as claimed by MDC. When a landowner divides an entire tract and conveys the resulting parcels by reference to a plat that shows an alleyway, a public way may be inferred. See *Davis v. City of Valdosta*, 223 Ga. 523 (156 SE2d 345) (1967). Upon examination, however, it appears that the plat in this case is not that of a common grantor subdividing all of his property, as claimed by MDC, but rather shows only a portion of the common grantor's relevant land holdings. See *Hale v. City of Statham*, 269 Ga. 817, 819 (504 SE2d 691) (1998); *Hobbs v. Ware County*, 247 Ga. 385 (276 SE2d 575) (1981). Furthermore, as explained above, MDC's "Bell property" and Littell's property are located on the same side of Warehouse Alley. Property owners with a common grantor who hold two adjoining parcels on the same side of a road do not acquire interests in the road as it abuts the other's property. *Stutts v. Moore*, 218 Ga. App. 624 (463 SE2d 30) (1995).

manifest acceptance" of a road for public use.[6] As indicated above, the record reveals no evidence to clearly indicate that the City of Blackshear has ever exercised its dominion and control over the property.[7]

For all of these reasons, we conclude that the trial court did not err in concluding that there had been neither a public dedication nor a public acceptance of Warehouse Alley.

2. The trial court did not err in finding that MDC Blackshear was unauthorized to exercise dominion over and develop the portion of Warehouse Alley that abuts Littell's property.

> The bounding of a tract by the edge or margin of a road will pass the fee to the middle line of the road when the vendor owns the fee on both sides. [Likewise], if he owns the fee on one side only, and the whole road is upon the margin of his tract, the proprietor on the opposite side not having any interest in its ownership, a conveyance of the tract as bounded by the margin of the road should, and we think would, pass the fee in the whole road.[8]

Littell's property and MDC Blackshear's warehouse property sit on opposite sides of the disputed portion of Warehouse Alley. There is no common grantor with regard to the two properties. The chain of title to Littell's property references Warehouse Alley as a boundary line. Conversely, the chain of title to MDC Blackshear's warehouse property does not reference Warehouse Alley as a boundary, nor does that chain of title indicate an existing reservation of the use of Warehouse Alley. Accordingly, under the rule of law recited above, the trial court did not err in ruling that Littell is the owner in fee simple of the portion of Warehouse Alley that abuts his property. Nor did the trial court err in ruling that MDC Blackshear's ownership interest in the portion of Warehouse Alley abutting its Bell property does not entitle it to use all of the alley for its own purposes, because it does not have rights in that portion of the alley that abuts Littell's property.

3. We conclude that the evidence of record does not support the trial court's award of $25,000 in damages for MDC Blackshear's trespass upon Warehouse Alley. As noted above, the trial court ruled correctly that Littell owns fee simple title to the portion of Warehouse Alley that abuts his property. Hence, MDC Blackshear did commit a trespass when it cleared and paved that portion of the alley in prepa-

---

[6] *Hale*, 269 Ga. at 819.

[7] See id.

[8] *Stutts*, 218 Ga. App. at 627, quoting *Johnson & Co. v. Arnold*, 91 Ga. 659, 667 (18 SE 370) (1893); see *Forehand v. Carter*, 270 Ga. 534 (512 SE2d 611) (1999); Pindar, Georgia Real Estate Law & Procedure, § 13-10 (4th ed. 1993).

ration for the opening of its drugstore on nearby land.

It is axiomatic that the correct measure of damages for an intentional trespass is the difference in fair market value before and after the occurrence of the trespass.[9] In this matter, the record shows that the trial court based its award of trespass damages upon its estimate of the fair rental value that MDC Blackshear would receive for its tenant's use of the MDC properties. In so doing, the trial court used the incorrect measure of damages for an intentional trespass.[10]

The parties concede that Warehouse Alley remained a mere dirt road until MDC Blackshear cleared, leveled, graded, and paved the alleyway. As explained above, MDC Blackshear was not authorized to perform this work on Littell's portion of the alley, but it is difficult to conceive how MDC's paving of the alley caused a $25,000 diminution in the value of Littell's interest in the alley.

Because we conclude that the trial court used an incorrect measure when assessing trespass damages against MDC Blackshear, and because the record does not support the trial court's award of $25,000 in trespass damages, that portion of the trial court's order is reversed.

4. We also conclude that the evidence of record does not support the trial court's assessment of $50,000 in punitive damages against MDC Blackshear for its "wanton and willful disregard of [Littell's] rights to [his] property."

> Punitive damages may be awarded only in such tort actions in which it is proven *by clear and convincing evidence* that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.[11]

Something more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages.[12] Punitive damages cannot be imposed without a finding of culpable conduct based upon either intentional and wilful acts, or acts that exhibit an entire want of care and indifference to consequences.[13] While MDC Blackshear's trespass onto Littell's portion of the

---

[9] See *Whitaker Acres v. Schrenk*, 170 Ga. App. 238, 241 (316 SE2d 537) (1984).

[10] Id.

[11] (Emphasis supplied.) OCGA § 51-12-5.1 (b).

[12] *Fulton v. Anchor Savings Bank*, 215 Ga. App. 456 (452 SE2d 208) (1994); *Lewis v. Suttles Truck Leasing*, 869 F. Supp. 947 (S.D. Ga. 1994).

[13] *Howard v. Alamo Corp.*, 216 Ga. App. 525 (455 SE2d 308) (1995); *Brown v. StarMed Staffing*, 227 Ga. App. 749 (490 SE2d 503) (1997).

alley was tortious, we cannot agree with the trial court that the evidence showed clearly and convincingly that the trespass occurred in wanton disregard for Littell's property rights. It is true that before MDC Blackshear began to pave the alley, Littell informed it of his claim to the alley as it abutted his property. However, it is also true that before it began to make improvements on Warehouse Alley, MDC Blackshear engaged in due diligence to ascertain the merit of Littell's claim and to determine whether Warehouse Alley was a public way. Blackshear city officials informed MDC that in their opinions, the alley was a public way, and gave MDC permission to grade and pave the alley. Before beginning work on the alley, MDC Blackshear also performed a title search and reviewed the relevant tax records in an effort to determine whether the alley was public or private property.

As explained above, MDC Blackshear ascertained incorrectly that the alley was a public way, and it did trespass upon Littell's property. MDC might have acted with negligence; however, in light of its due diligence and the sanction it received from City officials, we cannot say that the record shows clearly and convincingly that MDC's actions were in wanton and wilful disregard of Littell's property rights. Therefore, we reverse the trial court's assessment of punitive damages against MDC Blackshear.

5. Finally, we conclude that the trial court was authorized under OCGA § 13-6-11 to require MDC Blackshear to pay Littell's attorney fees and litigation expenses in the sum of $25,000. An award of fees and expenses must be affirmed if there is any evidence to support it.[14] Under § 13-6-11, fees and expenses may be awarded when a plaintiff is caused unnecessary trouble and expense above the normal trouble and expense associated with litigation. As explained above, MDC Blackshear was put on notice of Littell's claim well before it began work on the alley. Had MDC conducted a very careful analysis of Littell's chain of title, it likely would have discovered there was merit to his claim. Because the trial court was authorized to conclude that MDC Blackshear has put Littell to unnecessary trouble and expense in this matter, the court's award of fees and expenses is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

---

[14] *APSS, Inc. v. Clary & Assocs.*, 178 Ga. App. 131 (342 SE2d 375) (1986).

Decided October 23, 2000 —
Reconsideration denied November 30, 2000.

Dillard & Bower, Terry A. Dillard, Heyman & Sizemore, William B. Brown, George H. Myshrall, Jr., Jacqueline Marcucci, for appellants.

Kenneth E. Futch, Daniel L. Bennett, Jr., Phillip N. Golub, for appellee.