A07A2110. WARNER et al. v. BROWN.
(659 SE2d 885)

MILLER, Judge.

Scott D. Warner and his wife, Susan G. Warner, appeal from the trial court's grant of summary judgment against them and in favor of their neighbor, William H. Brown, on Brown's claims for trespass. The Warners allege that the trial court erred in finding that Brown owns in fee simple the property on which they allegedly trespassed (the "Roadway"). They base this claim of error on their assertions that: (i) Brown's chain of title does not support his claim to ownership of the Roadway; (ii) by operation of law, the title to the Roadway vested equally in Brown, the Warners, and an additional adjoining landowner; and (iii) the warranty deed that purports to give Brown title to the Roadway is invalid. Alternatively, the Warners claim that

---

if Brown has valid title to the Roadway, they have obtained prescriptive rights in the same. Based on the foregoing, the Warners also assert that the trial court erred in denying their motion for summary judgment on all claims asserted against them by Brown. Discerning no error, we affirm.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. [Cit.]

*Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the evidence shows that the Warners and Brown own neighboring lots on Talahi Island in Chatham County. The lots are separated by the Roadway, which is a strip of land approximately 30 feet wide. The Roadway functions as the driveway to Brown's property and was originally part of a single parcel of property owned by Donald Shearhouse. The Shearhouse parcel was bordered by a marsh on the southern end and a public street, known as Suncrest Boulevard, on the northern end. In 1952, Shearhouse subdivided this parcel into two lots, with one lot fronting the marsh (the "marsh lot") and the other fronting the street (the "street lot"). That same year, Shearhouse sold the street lot to Hugh and Vivian Holland, and in 1953 he sold the marsh lot and the house situated thereon to W. I. and Effie Robinson.

Both the deed conveying the street lot to the Hollands and the marsh lot to the Robinsons describe those lots as being bordered on the east by a "thirty foot street." All parties agree that the "thirty foot street" refers to the Roadway, and that the Roadway runs the length of both lots, starting at Suncrest Boulevard, continuing through the marsh, and ending at Camoose Creek. Although the Roadway was part of the original parcel owned by Shearhouse, he did not explicitly convey it either to the Hollands or the Robinsons at the time he sold them their respective lots. The Robinsons, however, used this land as a driveway to access Suncrest Boulevard, and the Hollands used it for pedestrian access to the marsh.

The record reflects that the Hollands and the Robinsons were close friends and that, during the mid-1950s, Mr. Robinson and Mr. Holland worked together to build an earthen causeway over that part of the Roadway that extends across the marsh. The men then

constructed a dock, attached to the causeway, on Camoose Creek. Both families used the causeway and dock for approximately 40 to 50 years.

W. I. Robinson died in 1985, leaving Effie Robinson with a life estate in his one-half interest in the marsh lot, with the remainder to his son, Billy Robinson. Effie deeded her one-half interest in the property to her nephew, Brown, in 1997 and died a year later. In July 2000, Brown purchased from Billy Robinson his one-half interest in the marsh lot, thereby uniting title to the same.

In 1971, Susan Warner's parents, Henry and Cecille Griffith, purchased an undeveloped tract of land immediately east of the Roadway. The Griffiths subdivided this property in 1991, and conveyed the westernmost portion — i.e., that portion that borders the Roadway — to the Warners, who built a house on the same.

In late 1992 or early 1993, the Warners sought and received permission from Effie Robinson to have pedestrian access to the causeway. The Warners built a dock off the end of the causeway in 1993, making room for the same by removing the original pilings belonging to the Robinsons. Although this dock sits on Camoose Creek in front of the Warners' property, the only access to it is over the causeway.

In October 1993, Billy Robinson installed a fence on the marsh lot that blocked pedestrian access to the causeway. The following month, counsel for Billy and Effie Robinson sent the Warners a letter revoking any previous permission they had to access the causeway. Scott Warner thereafter contacted Effie Robinson and demanded that she remove the fence. When she refused, Warner tore down that part of the fence that blocked his access to the causeway, allegedly destroying shrubbery belonging to the Robinsons. After Brown became a part-owner of the marsh lot, his attorney sent the Warners a letter in March 1998, demanding that they cease trespassing on that property.

On March 5, 1999, Sarah Shearhouse, the widow of Donald and the executrix of his estate, executed a quitclaim deed conveying the Roadway to Billy Robinson, who at that time owned a one-half interest in the marsh lot. That deed recited: (i) that when Donald Shearhouse conveyed the street lot to the Hollands in 1952, he expressly reserved the Roadway so that the marsh lot would have access to Suncrest Boulevard; and (ii) that in 1953, it was Mr. Shearhouse's intent to convey to the Robinsons all portions of his original parcel that had not been previously conveyed to the Hollands.

The Hollands and the Warners together sued Brown and Billy Robinson in 1999 over access to and use of the causeway. That suit was dismissed after the parties reached an agreement granting the

Warners, their children, and individuals accompanied by those persons, pedestrian access to the causeway.[1] That agreement specifically reserved the rights of the parties to litigate in the future any and all issues regarding access to and use of the causeway. After the Warners allegedly violated that agreement, they were notified by letter dated April 6, 2004 that permission to access and use the causeway was revoked.

On November 16, 2004, Brown initiated the current action, seeking an injunction to prevent the Warners from accessing or using the causeway, damages resulting from the Warners' alleged trespass, a forced sale of the Warners' dock to Brown, and attorney fees and expenses. Brown filed a motion for summary judgment on his trespass claims and the Warners filed a cross-motion for summary judgment in their favor on all of the claims asserted against them by Brown. The trial court granted Brown's motion and denied the Warners', finding that Brown had valid title to the Roadway. This appeal followed.

1. The Warners first argue that Brown's claim to the Roadway is not supported by his "chain of title." In support of this claim, they recite portions of the deeds (i) conveying the original parcel to Shearhouse in 1951; and (ii) conveying the marsh lot from Shearhouse to the Robinsons in 1953. Under Georgia law, however, these deeds operated to convey title to that part of the Roadway bordering the marsh lot to the Robinsons and their successors in interest.

"When a grantor conveys property as bounded by a road that the grantor also owns, Georgia courts apply a rule of construction to hold that the deed conveys the fee interest that the grantor held in the road unless there is a clear expression of a contrary intent." (Footnote omitted.) *1845 La Dawn Lane, LLC v. Bowman*, 277 Ga. 741, 742 (1) (594 SE2d 373) (2004). Thus, for Shearhouse to have retained any ownership interest in the Roadway, he would have had to expressly recite the reservation of such rights in the deeds of conveyance to the Hollands and the Robinsons. See *Rolleston v. Sea Island Properties*, 254 Ga. 183, 187 (5) (327 SE2d 489) (1985); *Houston v. Deal*, 198 Ga. App. 335, 336 (401 SE2d 562) (1991).

The foregoing rule was first enunciated by the Supreme Court of Georgia in *Johnson & Co. v. Arnold*, 91 Ga. 659, 667 (1) (18 SE 370) (1893), and has been consistently applied for over a century, based upon the public policy goal of avoiding "the undesirable result of having long, narrow strips of land owned by people other than the adjacent landowner." (Punctuation and footnote omitted.) *1845 La*

---

[1] There is no evidence in the record of the terms of any settlement agreement presumably made by Brown and Billy Robinson with the Hollands.

*Dawn Lane, LLC v. Bowman,* supra, 277 Ga. at 742 (1). See also *Descendants of Bulloch, Bussey & Co. v. Fowler,* 267 Ga. 79, 81 (475 SE2d 587) (1996); *Johnson,* supra, 91 Ga. at 666 (noting that this rule was "the one most likely to conform to the real intention of the parties in most instances . . ."); *Stutts v. Moore,* 218 Ga. App. 624, 627 (463 SE2d 30) (1995).

Here, because the deed by which Shearhouse conveyed the marsh lot to the Robinsons described the property as being bounded on the east "by a 30-foot road," we must conclude that title to that part of the Roadway which adjoined the marsh lot was transferred to the Robinsons at the time Shearhouse conveyed that property in 1953.[2] Accordingly, ownership of that portion of the Roadway transferred to the Robinsons' successors in interest, including Brown. See *Stutts,* supra, 218 Ga. App. at 627. Because he owns that property, therefore, Brown has the right to prevent the Warners from traveling over the same.

The Warners seek to avoid this result by arguing that where a grantor fails to specifically convey a portion of his property described or used as a road, that property must be divided equally between the landowners on either side of such road. Such "equal division," however, is required only where the grantor originally owned the land on both sides of that road. See *Stutts,* supra, 218 Ga. App. at 627; *Johnson,* supra, 91 Ga. at 667. Where, as here, the grantor owned only the property on one side of the road referenced in the deed of conveyance, that conveyance passes "the fee in the whole road" to the grantee. *Johnson,* supra, 91 Ga. at 667. See also *Stutts,* supra, 218 Ga. App. at 627. "[I]t makes no difference in this respect whether the road spoken of in the deed is already in existence as a way in actual use, or

---

[2] Similarly, the deed by which Shearhouse conveyed the street lot to the Hollands described that property as being bounded on the east "by a 30-foot street." In applying the *Johnson* rule, the Supreme Court of Georgia has held that "[p]roperty owners with a common grantor who hold two adjoining parcels on the same side of a road do not acquire interests in the road as it abuts the other's property. [Cit.]" *MDC Blackshear, LLC v. Littell,* 273 Ga. 169, 171 (1), n. 5 (537 SE2d 356) (2000). See also *Stutts,* supra, 218 Ga. App. 624. Arguably, therefore, the Hollands obtained title to that part of the Roadway adjoining the street lot at the time Shearhouse conveyed the same to them in 1952. We note, however, that there is evidence in the record indicating that Shearhouse intended to convey the Roadway as part of the marsh lot, while reserving an easement over the same to the street lot to provide it with water access. This evidence includes: (i) the recitations contained in the 1999 quitclaim deed; (ii) the 1952 sales contract between Shearhouse and the Hollands, which contained a special stipulation providing that the Hollands would have an easement, to run with their property, giving "the right of ingress and egress to the water" (i.e., to Camoose Creek); and (iii) Mr. Holland's deposition testimony, given in connection with the 1999 litigation, that Shearhouse specifically told him that he would have "water rights" and that his property would be granted an easement over the Roadway for that purpose. The respective rights in the Roadway held by Brown and the Hollands or their successors in interest, however, would need to be decided in a separate proceeding, such as a quiet title action, to which all interested individuals are named parties.

is unopened[,] and only a road in contemplation." *Johnson*, supra, 91 Ga. at 667-668. See also *Houston*, supra, 198 Ga. App. at 337 ("The real or proposed existence of a private road on a boundary does not ipso facto render it subject to the use of all who live near or by the place.").

2. The parties devote most of their arguments to the question of whether the 1999 quitclaim deed, by which Sarah Shearhouse purported to transfer title to the Roadway to Billy Robinson, is valid and, if so, whether it could operate to divest the Warners of any alleged right they had to use the Roadway. As discussed in Division 1, however, the 1953 deed of conveyance from Shearhouse to the Robinsons also conveyed title to the portion of the Roadway that is the subject of this dispute, i.e., the portion adjoining the marsh lot, including that part on which the causeway sits. Accordingly, Sarah Shearhouse had no property rights in the Roadway to convey. Moreover, our determination that Brown owns that part of the Roadway which adjoins the marsh lot is sufficient to allow us to resolve the question at hand — i.e., whether the trial court properly granted summary judgment in favor of Brown on his trespass claims.

3. The Warners further assert that, even if Brown owns the Roadway, they have nevertheless obtained prescriptive rights in the same. We disagree.

The Warners first claim prescriptive rights under OCGA § 44-9-1, which provides that "[t]he right of private way over another's land may arise from . . . prescription by seven years' uninterrupted use through improved lands or by 20 years' use through wild lands." To establish such a right of way over the Roadway, the Warners were required to demonstrate: (i) that their use of the Roadway was uninterrupted for at least seven consecutive years; (ii) that they kept the Roadway open and in good repair during that time; (iii) that their use of the Roadway was adverse — i.e., that it was done with either actual or constructive notice to Brown or his predecessors in interest that they intended to appropriate the Roadway as their own; and (iv) that the Roadway was no more than 20 feet wide. See *Trammell v. Whetstone*, 250 Ga. App. 503, 505 (1) (552 SE2d 485) (2001); *MacGibbon v. Akins*, 245 Ga. App. 871, 873 (3) (538 SE2d 793) (2000). "[W]here, as in this case, a private way is claimed by prescription, the party setting up such claim must bring himself strictly within the requirements of the law." (Citations and punctuation omitted.) *Hasty v. Wilson*, 223 Ga. 739, 742 (2) (a) (158 SE2d 915) (1967). This the Warners cannot do.

Assuming arguendo that the Warners could prove seven years of continuous, adverse use of the Roadway, there is no evidence in the record showing that they maintained the Roadway during that time — i.e., that they kept it open and in good repair. Moreover, the record

makes clear that the Roadway exceeds the 20-foot maximum width allowed for the creation of a private right of way under OCGA § 44-9-1. Specifically, the Roadway is referred to in the relevant deeds of conveyance and surveys as a "30 foot road." All parties appear to interpret this language as meaning that the Roadway is a parcel of land, 30 feet wide, that runs the length of both the marsh and the street lots (the combined length of those lots being well in excess of 30 feet). At the very least, the description in the deeds constitutes prima facie evidence of the Roadway's width, and the Warners have introduced no evidence showing that the width is instead 20 feet or less. Accordingly, the record establishes that the Roadway is too wide to function as a private right of way.

Alternatively, the Warners claim that they were given a parol license to use the Roadway to access their dock, and that such license has ripened into an easement pursuant to OCGA § 44-9-4. That statute provides:

> A parol license to use another's land is revocable at any time if its revocation does no harm to the person to whom it has been granted. A parol license is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land.

The Warners assert that their expenditure of funds in constructing and maintaining their dock is sufficient to give them an easement over the Roadway for purposes of accessing that dock. This argument, however, ignores the rule that "the mere fact that a licensee erects improvements upon his own land in the expectation of enjoying a parol license, and thereby incurs expense, is not enough to make the license irrevocable under OCGA § 44-9-4." (Footnote omitted.) *Decker Car Wash v. BP Products North America*, 286 Ga. App. 263, 266 (649 SE2d 317) (2007). Rather,

> Georgia courts have generally recognized the creation of an irrevocable easement only where the licensee's enjoyment of the license is necessarily preceded by some investment of funds which increases the value of the licensor's land to the licensor. *Cox v. Zucker*, 214 Ga. 44, 51-52 (3) (102 SE2d 580) (1958) (despite the fact that in reliance on a license the licensee erected a building that could only be reached by crossing the licensor's property, the license was revocable where the licensee did nothing to improve the burdened estate); *Tift v. Golden Hardware Co.*, 204 Ga. 654, 667-669 (6) (51 SE2d 435) (1949) (license was revocable where a

hardware company built a warehouse in anticipation of using a spur track across the licensor's property but did nothing to enhance the value of the spur track on the subservient property).

Id.

Given that the Warners have expended no funds to improve either the Roadway or some other part of Brown's property, they cannot claim an easement over that property pursuant to OCGA § 44-9-4.

For the reasons set forth above, we find that Brown owns that part of the Roadway bordering his property, including that part on which the causeway sits, and therefore affirm the trial court's order granting summary judgment to Brown on his claims for trespass.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 25, 2008.

*Gannam & Gnann, J. Hamrick Gnann, Jr.*, for appellants.
*Brennan, Searcy & Smith, Mark H. Glidewell, Beverly G. O'Hearn*, for appellee.